No. 22919.

Charles Hampton *v.* The People of the State of Colorado.

(465 P.2d 112)

Decided February 9, 1970.     Rehearing denied March 9, 1970.

EDWARD H. SHERMAN, Public Defender in and for the City and County of Denver, WILLIAM CHISHOLM, Public Defender in and for the City and County of Denver, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, AUREL M. KELLY, Special Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

CHARLES HAMPTON was charged with and found guilty of aggravated robbery (C.R.S. 1963, 40-5-1) and conspiracy to commit robbery (C.R.S. 1963, 40-7-35). The court imposed sentences of imprisonment, within the statutory limits on both counts, the sentences to run concurrently. Hampton is here on writ of error, alleging error in eight separate instances.

The two alleged offenses arose out of the following factual situation. The supermarket involved had just been closed for the day. As one of the employees was crossing its parking lot to his car he was intercepted by two men wearing Halloween masks who, by threats and intimidation and the use of a revolver, demanded that he unlock the store (although he had no key) so they could

enter. The assistant manager, one Stan Sperlak, observing the plight of the employee, opened the door. The masked men entered and ordered Sperlak to open the safe. While the contents of the safe were being removed by the two masked men, a third man, also armed with a pistol, wearing a similar mask, entered the store through the unlocked door.

As the third man came through the door, his mask was in some manner pulled from his face, momentarily enabling Sperlak to recognize him as a person who worked at the filling station across the street from the market. Sperlak's identification of the defendant at the trial was crucial to the conviction.

After emptying the safe, the three masked men ran from the store and left in a car belonging to one of the store's employees. The defendant was arrested at his place of residence a few days later.

The eight alleged errors fall basically into five categories and will be so grouped for discussion of their merits.

I.

People's Exhibits "A" and "B" were admitted into evidence over the objection of the defendant. Exhibit "A" is a sales ticket for a .38 caliber pistol clip. Exhibit "B" is a sales ticket relating to a .32 caliber pistol. Exhibits "A" and "B" were obtained by the arresting officer at the time of and incidental to defendant's arrest under these material circumstances.

The arresting officer apparently awakened the defendant when he knocked on the door. The officer entered defendant's room, informed him he was under arrest, and ordered him to dress. The officer observed that the defendant, while dressing, was dropping pieces of paper into the waste basket. The officer retrieved them, pieced them together, and they were received in evidence as the two challenged exhibits.

The evidence as to their identity, although questioned, was clearly established. The defendant's contention that

the exhibits were not related to any gun shown to have been used by the defendant in the crime and were, therefore, irrelevant is not well taken. It is true that the guns used in the robbery were not recovered, so, consequently, none was offered in evidence by the prosecution, but the test of relevance and materiality is not so limited.

This court, in *Washington v. People,* 158 Colo. 115, 405 P.2d 735, reiterated the rule which has long been followed in this state:

"* * * In order to establish the relevance and materiality of real evidence, it must only be connected in some manner with either the perpetrator, the victim or the crime. * * * "

Exhibits "A" and "B" were unarguably connected with the perpetrator — the defendant — because he had them in his possession at the time of his arrest. His attempt to destroy the evidence of ownership of a gun and a gun clip were properly admissible to show consciousness of guilt as well as possession of a pistol and clip prior to the robbery. The exhibits were relevant and material under the tests set forth in *Washington.* Consequently, this assignment of error is without merit.

## II.

In order to counter Sperlak's identification testimony, counsel for the defendant requested an opportunity to demonstrate that the type of mask used would not come off the defendant's face in the manner described by the witness. To conduct the demonstration counsel proposed to use a mask "similar" to that described by Sperlak. The district attorney objected to the use of a "similar" mask. The court, after an *in camera* hearing, sustained the objection. The court ruled that in the absence of one of the actual masks used in the robbery the demonstration could not be performed.

An examination of the record discloses that the court was concerned with the possible variance between the mask proposed to be used in the demonstration and the actual mask worn in the robbery. Among the variables

suggested by the court were *contour, tightness* (fit) and *opaqueness.* These variations, in the court's appraisal, would render the proposed demonstration unreliable.

The question presented by the defendant's assignment of error resolves itself into whether the court abused its discretion in denying to defendant the right to attempt to impeach Sperlak's testimony on identification by the proposed demonstration. *Starr v. People,* 28 Colo. 184, 63 P. 299.

■■ It is a fundamental rule of law that the admission into evidence of models or articles of similar design for purposes of demonstration is solely within the discretion of the trial court. In the absence of a gross abuse of discretion this court will not disturb the ruling of the trial court. *Bebber v. People,* 160 Colo. 60, 414 P.2d 131. Consonant with *Bebber,* we hold that the trial court's ruling here did not exceed the bounds of its discretion.

III.

The third category of assigned errors relates to alleged material imperfections in four instructions given by the court. Each will be treated separately.

■ (a) *Conspiracy.*

In his brief the defendant argues:

"The verdict of the jury and the sentence of the Court on this Count [conspiracy] must be set aside because the jury was not advised what the offense of conspiracy consists of."

An examination of the instruction discloses that it advised the jury that it must find beyond a reasonable doubt that there was a common design or purpose to commit an unlawful act by a concert of action. Although the instruction should not serve as a model of preciseness, it does set forth the essential elements of the offense charged in understandable language. The law does not require more. *LaVielle v. People,* 113 Colo. 277, 157 P.2d 621. The verdict and judgment on the conspiracy count are affirmed.

■ (b) *Alibi.*

Defendant's sole evidentiary defense was based on *alibi*. Two witnesses, other than defendant, testified that they were working on an automobile, belonging to one of them, in an automobile service station directly across the street from the market. This activity continued during the entire period of the robbery. Both witnesses testified that the defendant was with them during the entire period of time covered by the commission of the robbery.

Defendant's assigned error is founded on his interpretation of that language in the instruction which advises the jury that it may consider the alibi if it appears "* * * that at the very time of the commission of the crime the accused was at another place *so far away and under such circumstances* that he could not with any ordinary exertion have reached the place where the crime was committed * * *." (Emphasis added.)

The defendant contends the underscored phrase effectively removes the defense of *alibi* from the jury's consideration. Because the defendant's witnesses put the defendant just across the street from the scene of the crime, argues the defendant, he, as a matter of law, was not "so far away" as to come within the contemplation of the defense as spelled out in the language of the instruction.

To agree with the defendant we would have to hold that "so far away" imports (implies) some specific distance greater than the width of a street. In our view, consideration of "so far away" must be coupled with "under such circumstances," as it is in the instruction, and when it is so coupled the *actual* distance is strictly a relative matter. If the jury had believed the defendant was across the street at the time of the crime, working on the witness' automobile, they would have, in effect, found that he was "so far away and under such circumstances" that he could not have committed the crime. In short, the instruction says that a person cannot be in two places at the same time. By the same token, the fact that an accused was seen in another state hun-

dreds of miles from the scene of the crime a few hours before or after the crime charged would not necessarily, in this age of jet flight, establish an *alibi* to the satisfaction of a jury. Distance alone is not the measurement; but distance plus circumstances.

(c) *Specific Intent.*

The defendant asserts that since he was charged with so-called *aggravated* robbery the court erred, as a matter of law, in failing to instruct the jury on the element of *specific intent,* that is, in order to convict the defendant of "aggravated" robbery the jury must find not only that the defendant committed the robbery, but that in the perpetration of such robbery he was armed with a dangerous weapon *with intent, if resisted, to kill, maim or wound the person robbed or any other person.* C.R.S. 1963, 40-5-1(2) (b).

The jury was not so instructed. However, the court did give a proper instruction on so-called *simple* robbery, that is, the felonious and violent taking of money, goods or other valuable thing from the person of another by force or intimidation. C.R.S. 1963, 40-5-1(1).

▮ *Simple* robbery is a lesser included offense of the crime of *aggravated* robbery. By finding the defendant guilty "as charged" the jury, of necessity, had to find he had committed simple robbery. Since the jury had not been instructed on the specific intent "to kill, maim or wound," if resisted, a necessary ingredient of aggravated robbery, it is not possible to know what they would have found in this respect had they been so instructed.

The situation presents this novel question: Where the defendant is charged with *aggravated* robbery but the case is submitted to the jury upon an instruction for *simple* robbery, and the jury returns a verdict of "guilty as charged," should the court treat the verdict as a finding of guilty as to *simple* robbery?

▮ This court has held that a defendant charged with *aggravated* robbery is entitled to an instruction on the element of *specific intent* "to kill, maim or wound,"

if resisted, whether requested or not. *Gonzalez v. People,* 166 Colo. 556, 445 P.2d 74. Therefore, the court having failed to properly instruct the jury on a necessary element of the crime charged, a verdict of guilty as to aggravated robbery cannot stand. However, the evidence of use by the defendant of a hand gun in the commission of the robbery was sufficient, if believed, to have sustained such a verdict. *McGraw v. People,* 154 Colo. 368, 390 P.2d 819. On the other hand, there was no evidence of actual violence or threats of violence on the part of the defendant. The state of the evidence was such that the jury could have found that the people had failed to prove the element of specific intent beyond a reasonable doubt. *Hollon v. People,* 170 Colo. 432, 469 P.2d 490.

The situation here is analogous to that in *Foster v. People,* 1 Colo. 293, where the court set aside the judgment on a verdict of guilty of mayhem, a felony, and remanded the case to the trial court to enter a judgment on the verdict for a misdemeanor, which was a lesser included offense. The error in *Foster* was in an instruction which attempted to inform the jury of the necessary elements of the offense of mayhem. The court held that the instruction was deficient as to mayhem but adequate as to the lesser offense.

Inasmuch as a proper instruction on simple robbery was given and the evidence is sufficient to sustain a verdict of guilty on the lesser included offense of simple robbery, we elect to treat the verdict of guilty "as charged" as a verdict of guilty of simple robbery.

## IV.

The defendant asserts error in the trial court's denial of his several motions for a new trial, some of which were *pro se,* based upon newly discovered evidence. In the alternative he claims the ineffective representation of counsel entitled him to a new trial.

We conclude there is no merit to either contention. It is evident from the affidavits attached to defendant's

motion that the newly discovered evidence would at most only tend to impeach the testimony of the eye-witness, Stan Sperlak. Absent a showing that the newly discovered evidence would probably lead to a different verdict, we find no abuse of discretion by the trial court in denying the motion for new trial. *Miller v. People,* 92 Colo. 481, 22 P.2d 626.

The error alleged to have resulted from ineffective representation by counsel is covered in part V. hereof, wherein the subject is again raised by defendant's *pro se* "Motion In Arrest of Judgment."

## V.

▉▉▉ There were post trial motions filed in behalf of the defendant; by his retained trial counsel, a Mr. Scheiman; by special counsel appointed by the court, a Mr. Downey; and also *pro se.* The trial court held a two-hour hearing on the several motions for new trial and a subsequent hearing on a so-called *Pro se* Motion in Arrest of Judgment.

Mr. Scheiman's motion was directed to alleged errors committed by the trial judge in the course of the trial; Mr. Downey's and the defendant's *pro se* motions for new trial were based primarily on allegations that Mr. Scheiman failed to effectively represent the defendant, thus denying him due process of law.

The court, in disposing of the question of the inadequacy of representation by Mr. Scheiman, stated:

"First of all, considering the alleged inefficiency and ignorance of trial counsel Jack I. Scheiman, the attorney privately retained by the Defendant, an attorney of his own choosing, the Court specifically rules that the allegations of Defendant's Preliminary and Supplemental Motions are inefficient [insufficient] to support that part, or portion, of his motions, and are completely unwarranted by the facts. The Court has had the opportunity of observing Mr. Scheiman's trial technique during and through two long days of a serious and contested trial. Mr. Scheiman, in my opinion, demonstrated re-

peatedly throughout the trial a very definite working knowledge of the case itself, and a very capable and obviously intense sincerity in his representation of the best interest of his client, Mr. Hampton. It goes almost without saying, that different lawyers have different ways of trying a case, different trial techniques, different trial strategy, differences of opinion as to how a case should be handled in the best interest of a client, but in this case there was no indication at any stage of the proceedings that Mr. Scheiman was either inefficient or that he was ignorant as charged in the Supplemental Motions. In fact, quite the contrary. I would like to point out that in nearly 36 years as a practicing attorney in this state, and almost 14 years upon the bench, I have never seen a more sincere or a more dedicated and competent lawyer serving in the interest of a client. As a matter of fact, this was one of the few instances, very few instances I might say, in which I have been so inclined, because of the very obvious concern with which Mr. Scheiman heard the reading of the verdicts in this case, I immediately, upon reaching my chambers after receiving the verdicts in open court, requested the Division Bailiff, Mr. Edward Walsh, to ask Mr. Scheiman to come into chambers. I had intended to compliment him for the splendid job he had done on behalf of his client, and because he was so patently upset by the verdict I considered a few words of praise and of comfort from the Court in recognition of his conscientious efforts in this case would be appropriate. However, Mr. Scheiman had departed the court by that time, and unfortunately, Mr. Walsh was unable to bring him into chambers. The Court specifically, and completely, and without reservation rejects the contention that Mr. Scheiman was either inefficient or ignorant as alleged in Defendant's Supplemental Motions."

The defendant failed to demonstrate to the trial court that his trial counsel was guilty of palpable malfeasance, misfeasance and nonfeasance. The record does not disclose any flagrant shortcomings of the trial attorney

from which we could conclude he utterly failed to adequately represent the defendant's interest. *Garrett v. Osborn,* 164 Colo. 31, 431 P.2d 1012. See, also, *Torres v. People,* 159 Colo. 254, 411 P.2d 10, and cited cases. And it appears that the defendant was accorded procedural *due process* and a fair trial.

The judgment and sentence on the charge of conspiracy is affirmed. The judgment and sentence on the charge of aggravated robbery is set aside and the cause is remanded to the trial court for the entry of judgment and resentencing in accordance with the views herein expressed.

MR. CHIEF JUSTICE MCWILLIAMS and MR. JUSTICE HODGES dissenting.

MR. CHIEF JUSTICE MCWILLIAMS dissenting:

I dissent from the majority opinion and would affirm the judgment as it relates to both counts of the information.

Count one of the information charged the defendant with so-called aggravated robbery in the exact language of C.R.S. 1963, 40-5-1(1) and (2)(a) and (b). The first instruction given the jury set forth all of the material allegations contained in the aforesaid count one. The Jury by its verdict found defendant guilty of "robbery as charged in the first count of the information." Under the circumstances it is as plain to me as two plus two equals four that the jury intended to find the defendant guilty of aggravated robbery.

The majority also perceive error in the part of the trial court in failing to give *sua sponte* an instruction on specific intent. Furthermore, in view of the disposition of the case, I surmise that the trial court, in the eyes of the majority, should have also given the jury additional forms of verdict on simple robbery. As concerns the matter of instructions, it is to be noted that no instruction on specific intent was tendered and the matter was not

raised in the motion for new trial. As a matter of fact counsel for the defendant specifically stated that he had no objections to any of the instructions given the jury, nor did he himself tender any additional instruction. Similarly as concerns forms of verdict, counsel had no objection to the four forms of verdict submitted to the jury, nor did he request any additional forms of verdict relating to the lesser included offense of simple robbery.

The fact that counsel did not object either to the instructions or forms of verdict is not surprising when the nature of the defense is considered. It was the defendant's theory of the case that he was not guilty of any offense whatsoever and that the People's witness was mistaken in his identification of the defendant as one of the three robbers who carried a weapon. And in support of his theory of the case the defendant called alibi witnesses who attempted to establish that the defendant could not have committed any of the offenses charged. As we have recently stated in *Phillips v. People,* 170 Colo. 520, 462 P.2d 594, the rule in Colorado is that in a case in which a defendant is charged with aggravated robbery the trial judge need not give an instruction on simple robbery unless there is a request for such an instruction and the matter of intent is in some manner an issue in the case. As indicated, in the instant case no such instruction was requested and I submit that the matter of specific intent was not in any manner an issue in the case. Be that as it may, by the present disposition of this matter, the defendant nonetheless now stands convicted of simple robbery, when the only issue in the case was not the issue of intent, but the fundamental issue as to whether defendant was one of the gun-carrying robbers.

I would affirm the judgment in its entirety.

MR. JUSTICE HODGES concurs in this dissent.