Irving Lang, J.
During the course of this trial, the People called as a witness the woman who resides with the defendant. Her testimony dealt with certain incriminating statements made by the defendant to her. The defendant objected to the admission of this testimony on the ground of marital privilege (CPLR 4502, subd b) and the court conducted a voir dire of the witness. From this examination the court learned that the witness and the defendant had resided together in both New York and Puerto Rico; that the witness considered herself to be the defendant’s wife and had borne a child by him and that no ceremonial marriage had ever been performed.
Since neither New York nor Puerto Rico recognizes common-law marriage, the issue presented was whether the mari *359 tal privilege applied to what are euphemistically but not legally called common-law marriages. As common as "common-law marriages” are in this day and age, the court was astonished to find that the last reported case dealing with this issue was decided by the Court of Appeals in 1937 and in dicta at that (People v Woltering, 275 NY 51, 61). In Woltering, the court held that the issue of whether or not a prosecution witness was the common-law wife of the defendant should have been submitted to the jury with instructions to disregard her testimony if she was in fact the defendant’s wife. Disregarding the dubious value of instructing a jury to strike testimony in the jury room, it is reasonable to assume that the court was not extending the marital privilege to the unmarried but, instead, was allowing for the possibility that a valid common-law marriage had been contracted prior to abolition on April 29, 1933.
The marital privilege is founded in public policy considerations. The Legislature has determined that the confidences exchanged between husband and wife must be protected even at the cost of frustrating the fact-finding process. The same policy rationale could logically be applied to relationships such as the one in question. However, the Legislature has also expressed a clear public policy on common-law marriages by denying them validity (Domestic Relations Law, § 11). The marital privilege operates to preclude competent and material testimony, and the Legislature has found this is justified only to protect those who are legally husband and wife.
In a closely analogous situation, the Court of Appeals has affirmed the continuing public policy of withholding recognition of common-law marriages by refusing to extend family offense jurisdiction to those who are not formally married (People v Allen, 27 NY2d 108). The court so held despite the broader language contained in section 812 of the Family Court Act which grants exclusive jurisdiction over "members of the same * * * household.”
The insistence upon a valid marriage, be it ceremonial or recognized common law, before the privilege will apply, seems to be the rule in almost all jurisdictions (CJS, Witnesses, § 78; see, e.g. United States v Boatwright, 446 F2d 913; United States v Neeley, 475 F2d 1136; State of Louisiana v Kaufman, 331 So 2d 16 [La]; Hilt v State of Nevada 91 Nev 654).
It should also be noted that the majority of the statements that were testified to were made in the presence of a detective, *360 which would have vitiated the privilege in any event (People v Rodriguez, 38 NY2d 95.
Accordingly, the court finds that the witness’ testimony did not involve privileged communications and is properly admissible.