OPINION OF THE COURT
Alfred M. Ascione, J.
Motion by plaintiff judgment creditor for an order directing that Ronda Esser, the defendant judgment debtor’s wife, be punished for contempt for violation of, and noncompliance with a subpoena for her examination in this judgment enforcement proceeding, is denied.
Ronda Esser was subpoenaed to testify as a witness with respect to the judgment entered on August 18, 1976 against her husband Gene Esser, in the amount of $54,848.28, of which $52,381.43 remains unpaid. The examination proceeded on May 25, 1978, and it appears that the witness testified freely as to all matters, except that on the advice of counsel she refused to testify as to her husband’s present whereabouts or to the amount of support she is receiving from him, claiming such information calls for the disclosure of a confidential communication between her husband and herself, which is privileged.
Plaintiff argues that the marital privilege provides no grounds for refusing to answer questions about defendant’s whereabouts or his support because: (1) The communications relate to ordinary business matters; and (2) the privilege cannot be asserted to perpetrate a fraud.
CPLR 4502 (subd [b]) which encompasses the privilege pro *569 vides: "Confidential communication privileged. A husband or wife shall not be required, or, without consent of the other, if living, allowed, to disclose a confidential communication made by one to the other during marriage.”
Apparently, this is a case of first impression in New York. Diligent research by counsel and this court has failed to discover any reported case in which the precise issue has been litigated and decided.
At common law, one spouse was not competent to testify against the other due to the absolute privilege granted to each spouse. By statute, the communication must be confidential to be privileged. (People v Dudley, 24 NY2d 410, 413.)
The disclosure of confidential communications between a husband and wife is prohibited, as a matter of public policy, in order that the parties to a marriage may speak freely to each other of intimate confidences without the fear of thereafter being confronted in litigious matters with confessions (65 NY Jur, Witnesses, § 57, p 216), "even at the cost of frustrating the fact-finding process.” (People v Torres, 90 Misc 2d 358, 359; see, also, Matter of A. & M., 61 AD2d 426, 433-434.)
"The provision prohibiting testimony as to confidential communications applies only to those which are made in confidence, or which from their nature and the circumstances of disclosure appear to be as made or are such as spring out of and are induced by the marital relation and are therefore confidential in character. They must be expressly made confidential, or be of a confidential nature or be induced by the marital relation. * * *
"Confidential communications do not include ordinary conversations relating to matters of business, or other matters, which there is no reason to suppose either party would have been unwilling to hold in the presence of any person” (65 NY Jur, Witnesses, pp 218-219).
The statutory privilege does not protect "all the daily and ordinary exchanges between the spouses, but merely those which would not have been made but for the absolute confidence in, and induced by, the marital relationship.” (People v Melski, 10 NY2d 78, 80; People v Dudley, supra, pp 413-414.) Not forbidden are "ordinary conversations relating to matters of business which there is no reason to suppose he would have been unwilling to hold in the presence of any person.” (Parkhurst v Berdell, 110 NY 386, 394.)
*570 The privilege extends to "more than mere oral communications or conversations between husband and wife. It includes knowledge derived from observance of disclosive acts done in the presence or view of one spouse by the other because of the confidence existing between them by reason of the marital relation and which would not have been performed except for the confidence so existing.” (People v Daghita, 299 NY 194, 198-199; cf. Johnson v Johnson, 25 AD2d 672, 673.)
In this case, it appears that the defendant, Gene Esser, served a jail sentence from May, 1977 to October or November, 1977, and that his whereabout have been kept secret since his release from jail. The witness’ attorney, without explanation, suggests compelling reasons other than to hide from creditors. All attempts by plaintiffs attorney to have the witness disclose the whereabouts of her husband, directly or indirectly, were met by a claim of privileged confidential communication.
Questions such as: "Would you tell me who lives with you in your residence at * * *?” or "On how many occasions have you seen him since November, or since he was released from prison?” or "Does he live alone?” were objected to on the grounds of the privilege. The witness did testify, however, concerning the confidentiality of her knowledge as follows:
"Q. Other than yourself, is there anyone that you know of who is aware of your husband’s present residence?
"A. No.
"Q. Have you told anyone where your husband resides?
"A. * * * No.
"Q. You have not told a relative of yours or a friend of yours where your husband resides?
"A. No.”
She also testified insofar as is relevant to the issues, that she did not recall whether other people were present or not at any time when she saw him since his release from prison; that she had not been in a public place with her husband since his release; that she knows where he lives presently; that she gives him mail that comes addressed to him at her apartment, where she has lived for about 10 years; and that neither she nor her husband, to whom she has been married for 13 years, has filed for a divorce or separation or entered into a separation agreement.
*571 On these facts, it is clear to this court that the witness may not be required or allowed to disclose, without the consent of her spouse, his present whereabouts, which this court finds to be a confidential communication which springs out of the marital relationship. (97 CJS, Witnesses § 269, pp 769-770.) No matter how reprehensible such prohibition may appear in a given situation, including criminal prosecutions, and how frustrating it may be to this plaintiffs attempts at fact finding, it is protected by the public policy of the State as enunciated in the statute. (See People v Fields, 38 AD2d 231, affd 31 NY2d 713; People v Torres, 90 Misc 2d 358, 359, supra.)
The refusal to answer questions about the amount of support furnished to the witness by the judgment debtor, is more troubling. Plaintiff argues, with some persuasiveness, that such information is an ordinary business matter, not prohibited by the statute as a confidential communication; The New York cases cited by plaintiff in support of this argument, however, are not really in point.
Parkhurst v Berdell (110 NY 386, supra) concerned a defendant’s wife’s testimony at the trial about his conversation with her, in which he related the details of his obligations to the plaintiff in that case. The court, in rejecting the claim of privilege on appeal, found that there was no reason to suppose he would have been unwilling to hold such a conversation in the presence of any person (Parkhurst, supra, pp 393-394).
In Norris v Lee (136 App Div 685, 686) defendant’s letter to his wife in a suit on a promissory note was admitted in evidence, over objection, in which he said, " T will settle with your mother [the plaintiff] just as soon as I get my hands on the money from the mortgage which I hope to do next week.’ ” Rejecting the claim of privileged confidential communication, the court, citing Parkhurst (supra) held that the letter was essentially an "ordinary epistle” chronicling his daily activities and the reference to the plaintiff was only a small part thereof.
The decision in G-Fours v Miele, (496 F2d 809), also cited by plaintiff, is equivocal in its holding and appears uncertain as to what New York Law is on this subject. In that case, plaintiff obtained a judgment in the District Court against the individual defendant and his corporation based on fraud. Unable to collect, plaintiff began supplementary proceedings to uncover hidden or fraudulently transferred assets. Plaintiff *572 served information subpoenas and interrogatories upon defendant Miele, his wife and his corporation, which were ignored. On plaintiffs unopposed motion, the court directed them to respond and to pay counsel fees. As relevant here, the defendant’s wife refused to answer some questions, which sought information regarding her husband’s bank accounts and property and recent transfers to her by her husband of property or money (p 811), "on the grounds of the privilege between husband and wife.” The District Court, on plaintiffs motion, found the wife in contempt because the "’spousal immunity’” granted by New York State law did not protect her, citing Parkhurst (supra).
The Circuit Court affirmed, also citing Parkhurst, and its holding that ordinary business conversations are not privileged, stating, "Although the Court of Appeals has apparently never elaborated upon this statement, it has cited this aspect of Parkhurst with approval in dictum as the 'ordinary business matters’ exception to the marital privilege.” (G-Fours, supra, p 811.)
However, the court expressed its uncertainty, as follows (p 812): "Under the New York decisions, then, the inquiries here into such matters as the existence and location of Mr. Miele’s bank accounts and his ownership and transfer of property would not seem to invade the marital privilege.”
Later, the court said (p 813): "We realize that divining what the New York courts would do with the problem before us is a little like reading tea leaves. But as we recently noted, in the absence of a certification statute, we have no choice but to make an educated guess.”
In this case, the witness answered all questions about her husband’s assets, his bank accounts, personal property, life insurance, various apartments including that he was paying the rent of $610 monthly directly to the landlord, his former law practice and office, his friends, business and professional associates, gifts, present employment status, his education and legal experience, the source of any present income, business interests, marital status, tax returns, her credit cards and whether he pays the bills, safety deposit box and automobiles.
On the facts of this case, and in view of the absence of precedent to the contrary, the extremely narrow scope of the privilege claimed and the lack of any showing of fraud or an attempt to conceal fraud by this witness, the information *573 sought is held to be a confidential communication whose disclosure is prohibited by the statute.
As a final matter, plaintiff insists that the marital privilege should not be permitted to assist fraud, again citing G-Fours (supra) and a number of out-of-State cases cited therein. As before, this court restates that there has been no showing by plaintiff of any fraud committed by this witness or of her concealment of fraud by refusal to disclose the information protected by the privilege. Frustration in fact finding by reason of a statutory privilege based upon public policy considerations, is not fraud in and of itself. No precedent which is binding, or even persuasive, has been demonstrated to the contrary.
Accordingly, plaintiff’s motion is denied in all respects.