OPINION OF THE COURT
Herbert I. Altman, J.
A New Jersey resident has been issued a subpoena to testify before a New York County Grand Jury about matters relating to her husband, which concededly are not “confidential communications.” By agreement, the parties seek a ruling as to whether she may refuse to testify by invoking the New Jersey marital privilege statute.
The Grand Jury is currently investigating the murders of three young women. Two of them were found in a motor lodge in New York County, beheaded, their hands severed and their bodies badly beaten. Subsequently, the badly beaten and mutilated body of the third woman was found in a hotel in New York County.
The District Attorney’s office has reason to believe that *85 a New Jersey resident, John Doe,[1] is responsible for the three murders. Certain property belonging to the victims was found in the Doe residence in New Jersey during the course of a search conducted under the authority of a search warrant. A subpoena has been issued to Jane Doe, John’s wife, demanding her appearance before the Grand Jury to testify as to:
1. where she and her husband live;
2. access to certain areas in their home and to objects within their home;
3. access to and ownership of John Doe’s automobiles;
4. Jane Doe’s independent knowledge of the presence of items of property found in her husband’s automobile and in their home; and
5. identification of her husband’s handwriting.
None of these matters involve “confidential communications” and, as a consequence, the testimony sought is concededly not privileged under New York law (see CPLR 4502). Jane Doe has indicated that she intends to refuse to answer any questions asked of her before the Grand Jury because, as a New Jersey resident, she is entitled to the protection afforded by subdivision (2) of Rule 23 of the New Jersey Rules of Evidence, which provides: “The spouse of the accused in a criminal action shall not testify in such action except to prove the fact of marriage unless (a) such spouse and the accused shall both consent, or (b) the accused is charged with an offense against the spouse, a child of the accused or of the spouse, or a child to whom the accused or the spouse stands in the place of a parent, or (c) such spouse is the complainant.” (N.J.S.A. 2A:84A-17.) Additionally, she argues that although the Grand Jury is investigating murders which occurred in New York, she will be questioned concerning matters “which center in and around the marital residence in Lodi, New Jersey.”
Subdivision (2) of Rule 23 of the New Jersey Rules of Evidence does not, unlike its New York counterpart, simply bar testimony as to communications made by spouses during the course of a marriage, but instead, with certain *86 exceptions, not now relevant, renders one spouse incompetent to testify in a criminal action against the other. Consequently, subdivision (2) of rule 23 is a rule of witness competency rather than of privileged communications (see State v Brown, 113 NJ Super 348; State v Briley, 53 NJ 498).
Section 137 of the Restatement, Second, Conflict of Laws (hereafter referred to as the Restatement) provides that “[t]he local law of the forum determines what witnesses are competent to testify and the considerations that may affect their credibility.” (See, also, Shepard & Gluck v Thomas, 147 Tenn 338.) This is so because a rule of witness competency is a rule of evidence governed by the law of the forum (see Hausman v Buckley, 299 F2d 696, 700, cert den 369 US 885; Intercontinental Planning v Daystrom, Inc., 24 NY2d 372, 381, mot for rearg den 25 NY2d 959; Kilberg v Northeast Airlines, 9 NY2d 34, 41). Thus the New York marital privilege rule governs the instant situation.
Even if subdivision (2) of Rule 23 of the New Jersey Rules of Evidence was construed to be a privilege statute, New York law would nevertheless be controlling. Subsection (2) of section 139 of the Restatement provides that: “Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect.”
The comment to subdivision (2) suggests consideration of the following factors in determining the issue of admissibility (p 387): “(1) the number and nature of the contacts that the state of the forum has with the parties and with the transaction involved, (2) the relative materiality of the evidence that is sought to be excluded, (3) the kind of privilege involved and (4) fairness to the parties.”
Applying the tests suggested by the Restatement, New York has significant contacts with the parties and the transactions. Jane and John Doe were married in New York, and John Doe has worked in New York for the last *87 13 years. He allegedly met his victims in New York. One of the two identified victims worked in New York, and the other victim was a resident of New York County and also worked in New York. Moreover, the murders were committed in New York.
The testimony of Jane Doe is material; she may be the only person who can actually provide evidence as to who might have had access to the property belonging to the victims.
The fact that a marital privilege is at issue is significant in view of the policy of New Jersey “to make competency the rule and exclusion the exception” (State v Briley, 53 NJ 498, 509, supra).
The court in State v Briley (supra, p 506) explained: “It is the basic policy of our law that every person is qualified and compellable to be a witness and to give relevant and competent evidence at a trial. Rule 7 of the New Jersey Rules of Evidence; N. J. S. 2A :84A-16. Privileges expressly granted to persons to refuse to testify or to prevent another from testifying are exceptions to that policy. See Rules 23-32, 34, 36-40; N. J. S. 2A:84A-17 to 32. Since rigid adherence to the letter of the privileges promotes the suppression of truth, they should be construed and applied in sensible accommodation to the aim of a just result. In view of the obvious policy of the law to enlarge the domain of competency of witnesses and to adapt rules of evidence to the successful development of the truth, competency should be regarded as the rule and incompetency as the exception. This approach is plainly applicable to the so-called marital privilege.”
In compliance with the philosophy enunciated by the Supreme Court of New Jersey in Briley (supra), the Appellate Division of the Superior Court of New Jersey narrowed the scope of the broad language of subdivision (2) of rule 23 by holding that the rule is inapplicable “if the parties are divorced when the testimony is offered even though the communication was made while married.” (State v Brown, 113 NJ Super 348, 353.)
Since the courts of New Jersey have sought to narrow *88 the scope of subdivision (2) of rule 23 and as John and Jane Doe are apparently presently separated,[2] it does not appear that New Jersey has a strong interest in the application of subdivision (2) of rule 23 to this case.
I find that Jane Doe’s inability to rely on subdivision (2) of rule 23 would not result in unfairness to her. There is no indication that she relied on the protection afforded by that rule in obtaining the evidence which the People seek to adduce from her.
New York courts have evolved a governmental interest analysis approach which, when applied to the facts in this case, results in the same conclusion as that reached by use of the teachings of the Restatement (see Intercontinental Planning v Daystrom, Inc., 24 NY2d 372, mot for rearg den 25 NY2d 959, supra; Miller v Miller, 22 NY2d 12; Babcock v Jackson, 12 NY2d 473; People v Graham, 90 Misc 2d 1019). In Intercontinental Planning (supra, p 382), the Court of Appeals cited with approval its observation in Miller that “[T]he rule * * * in our most recent decisions is that the law of the jurisdiction having the greatest interest in the litigation will be applied and that the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.”
Thus, in determining whether New York or New Jersey’s marital privilege is applicable under a governmental analysis approach, it is necessary to examine “the contacts each state has with the action in relation to the policies underlying the conflicting laws.” (Skandia Amer. Reinsurance Corp. v Schenck, 441 F Supp 715, 723.)
The public policy underlying the New Jersey marital privilege statute is to preserve the sanctity of the marital relationship (State v Briley, 53 NJ 498, 505, supra) by basically prohibiting one spouse from testifying against the other. However, as previously noted, New Jersey case law has limited the scope of its privilege statute. New *89 York, while also concerned with the marital relationship, limits the scope of its marital privilege to “confidential communications.” (See CPLR 4502; People v Rodriguez, 38 NY2d 95, 100.) The public policy underlying the New York privilege is to encourage “the parties to a marriage [to] speak freely to each other of intimate confidences without the fear of thereafter being confronted in litigious matters with confessions” (Federated Dept. Stores v Esser, 96 Misc 2d 567, 569). New Jersey, as the place of the marital domicile, has an arguable interest in applying its marital privilege statute. However, since: (1) New Jersey judicially narrowed the scope of its marital privilege (cf. Trammel v United States, 445 US 40); (2) Jane Doe is now apparently separated from her husband; (3) New York is now conducting an investigation into the three murders which occurred within its boundaries, this State has a greater interest in applying its marital privilege statute. Moreover the fact that the Does’ marital relationship has apparently deteriorated strongly militates against New Jersey’s interest in having its statute applied in this proceeding. Thus, under either the Restatement approach or a governmental interest analysis approach, I find that Jane Doe may not invoke subdivision (2) of Rule 23 of the New Jersey Rules of Evidence.
The cases cited by Jane Doe in support of her contention that New Jersey’s privilege statute should be applied (Matter of Walsh v Herrick, 40 Misc 2d 413; Matter of Queen [Ortmeyer], 233 NYS2d 798; Matter of Cepeda [Cohane], 233 F Supp 465) are factually distinguishable from the instant case. Those cases involved situations in which either interrogatories were to be answered or depositions were to be taken in New York for use in trials in other jurisdictions. Moreover, in Matter of Superior Ct. of State of N. J. v Farber (94 Misc 2d 886, 888), a case also cited by Jane Doe, the court merely found that “no substantive right, constitutional or statutory, would be forfeited were respondents to submit to New Jersey’s jurisdiction. New Jersey courts are bound to allow full faith and credit to the laws of New York when necessary to protect the statutory entitlements of New York citizens. If the documents, as alleged, are privileged by virtue of *90 New York law, then they are no less privileged in New Jersey than in New York.”
The court did not, however, address the conflict of laws question and so did not decide whether the New York or New Jersey privilege statute would ultimately be held to apply.
Accordingly, witness Jane Doe is directed to appear before the Grand Jury and answer those questions asked of her which are not privileged pursuant to CPLR 4502. However, this should not be construed as a waiver of the witness’ right to invoke subdivision (2) of rule 23 should she be called upon to testify in a New Jersey proceeding.

. Fictitious names have been used for purposes of publication.

. The current condition of the Does’ marital union is clouded. Jane Doe has apparently either abandoned or failed to pursue an action for divorce and is residing in the marital premises. John Doe is incarcerated in New Jersey.