*550 OPINION OF THE COURT
Edward H. Lehner, J.
The novel issue raised on this motion of defendant Christie Brinkley Joel (Brinkley) to dismiss the complaint against her pursuant to CPLR 3211 (a) (7) is whether one has absolute immunity against a claim of tortiously interfering with a contract between the person’s spouse and a third party.
FACTS
In his complaint the entertainer Billy Joel (Joel) has asserted causes of action against Francis Weber and Frank Management, Inc. (FMI) seeking a judgment declaring valid the termination of an agreement under which FMI served as manager of Joel’s business and personal affairs (the Agreement). Joel asserts such right based on his discovery in the latter part of 1989 that FMI, acting through Weber (its president and former sole shareholder), committed fraud in handling of his finances and breached its fiduciary duty to him. Weber, who has recently filed for bankruptcy, is the brother of Joel’s former wife.
In the subsequent action instituted by FMI against Brinkley, which has been consolidated with the Joel action, FMI alleges that between January 1, 1986 and August 1989 Brinkley (who was married to Joel in 1985) "did wrongfully, knowingly, intentionally, maliciously and without reasonable justification or excuse, induce persuade and entice * * * Joel to violate, repudiate, and break” the Agreement, resulting in damage to FMI of $11,000,000. No facts are alleged to support this contention other than an assertion that Brinkley "harbored ill feelings and malice toward FMI as a result of the involvement of Frank Weber in the negotiation and execution” in 1985 of an antenuptial contract between Brinkley and Joel. Apparently Weber had acted as a negotiator for Joel in connection with such contract, pursuant to which FMI was to administer the household account of the parties.
In support of her motion Brinkley asserts that as Joel’s wife she has absolute immunity against this type of claim. She also notes that the Agreement was twice renewed (in 1987 and 1989) after her marriage to Joel.
DISCUSSION
In Guard-Life Corp. v Parker Hardware Mfg. Corp. (50 NY2d *551 183, 189 [1980]), the following principle was quoted from Restatement (Second) of Torts § 766: " 'One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.’ ” The court also noted (supra, at 190) the various factors set forth in Restatement (Second) of Torts § 767 to be considered in determining whether the interference was " 'improper’ ”, to wit:
"(a) the nature of the actor’s conduct,
"(b) the actor’s motive,
"(c) the interests of the other with which the actor’s conduct interferes,
"(d) the interests sought to be advanced by the actor,
"(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
"(f) the proximity or remoteness of the actor’s conduct to the interference and
"(g) the relations between the parties.”
Here the allegations of the complaint fail to set forth necessary facts to show conduct that could be deemed "improper” (see, Silverman v Caplin, 150 AD2d 673 [2d Dept 1989]; Quail Ridge Assocs. v Chemical Bank, 162 AD2d 917 [3d Dept 1990], lv dismissed 76 NY2d 936; Susskind v Ipco Hosp. Supply Corp., 49 AD2d 915 [2d Dept 1975]). The conclusory allegations that Brinkley acted "wrongfully, knowingly, intentionally, maliciously and without reasonable justification or excuse” are insufficient to satisfy the pleading requirement (see, Gertler v Goodgold, 107 AD2d 481, 490 [1st Dept 1985], affd 66 NY2d 946 [1985]; John R. Loftus, Inc. v White, 150 AD2d 857, 860 [3d Dept 1989]; Susskind v Ipco Hosp. Supply Corp., supra). Therefore, the complaint fails to state a cause of action and is dismissed.
Further, FMI is denied leave to replead because without allegations of wrongful conduct, such as physical threats or fraud (see, Guard-Life Corp. v Parker Hardware Mfg. Corp., supra, at 191), which is not asserted herein, the court finds that it is inappropriate to subject a party to inquiry concerning the motives behind advice and recommendations given to that person’s spouse. Partners to a marriage should have the unfettered ability to discuss all aspects of domestic economics, *552 including the suitability or unsuitability of any business venture, without fear of being called to account for the resulting steps either spouse may take that affect existing contractual relationships. The persuasive ability of either spouse to cause the other to alter business relationships should not be subject to judicial scrutiny as to the propriety thereof.
The court has found no New York case dealing with the immunity claimed herein, although in Silverman v Caplin (supra), a claim was asserted against a wife for persuading her husband to breach a contract, but the complaint there was dismissed on other grounds.
In Lee v Silver (262 App Div 149, 151 [1st Dept 1941], affd 287 NY 575 [1941]), where a mother was sued for advising her 17-year-old daughter to disaffirm a contract, it was held that "[p]ublic policy dictates that parents should have an absolute right to advise their infant children with regard to all matters * * * [without] inquiry as to motive[, as s]uch an unrestricted right is one most calculated to promote the best interests of the family”. The court finds this principle to be equally applicable to the relationship between husband and wife.
In MacDonald v Trammel (163 Tex 352, 354, 356 SW2d 143, 144 [1962]), a tortious interference claim against a wife for inducing her husband to breach a contract for the payment of commissions was dismissed, the court holding that since the property involved was part of their community estate, the wife should not "subject herself in damages for advising and consulting with her husband in respect to their common interests”.
Although New York does not have community property, under our Equitable Distribution Law it has been stated that " 'marriage is, among other things, an economic partnership to which both parties contribute as spouse, parent, wage earner or homemaker’ ”. (Price v Price, 69 NY2d 8,14 [1986].)
In light of the limited immunity, the court finds that no valid cause of action can be asserted against Brinkley based on claims, referred to in the opposing affidavit, that she sought a termination of the Agreement because of a desire not to have the brother of Joel’s former wife manage her finances, or because she wanted her own manager to serve the functions being handled by EMI under the Agreement (which asserted desire apparently has been fulfilled), or for any other reason not involving the type of wrongful conduct referred to above.
*553 Moreover, it would appear that crucial testimony to support FMI’s claims would be inadmissible. CPLR 4502 (b) provides that a "husband or wife shall not be required, or, without the consent of the other if living, allowed, to disclose a confidential communication made by one to the other during marriage.” Although this privilege does not apply to " 'ordinary conversations relating to matters of business’ ” (Johnson v Johnson, 25 AD2d 672, 673 [2d Dept 1966]; Federated Dept. Stores v Bloomingdale Bros. Div., 96 Misc 2d 567 [Sup Ct, NY County 1978]), here the Agreement related to more than business, as it included the handling of the household account created pursuant to the aforesaid antenuptial contract. Further, since FMI was managing the income and assets of the "marital partnership”, communications between Joel and Brinkley with respect thereto would not appear to be admissible as an ordinary business conversation, but rather would constitute the type of confidential discussions between spouses relating to their personal finances which would be subject to the statutory privilege.
In light of the foregoing, Brinkley’s motion to dismiss the complaint against her is granted, and the clerk shall enter judgment accordingly, severing the FMI action from the Joel action.