The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Larry A. THOMPSON, Defendant–
Appellant.

No. 94CA0972.

Colorado Court of Appeals,
Div. IV.

May 8, 1997.

Rehearing Denied July 10, 1997.

Certiorari Denied Feb. 2, 1998.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Laurie A. Booris, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Karen M. Gerash, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge BRIGGS.

Defendant, Larry Thompson, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree murder after deliberation. He contends the trial court erred in upholding as constitutional Colorado's spousal privilege law, § 13–90–107(1)(a)(II), C.R.S. (1996 Cum.Supp.). He also challenges several of the court's evidentiary rulings. We affirm.

In November 1991, in Denver, Colorado, a purported drug dealer was stabbed to death, tied with an electrical cord, wrapped in a blanket, and left in an alley. No suspects were identified at the time.

In August 1993, in Portland, Oregon, defendant was arrested when his wife reported an incident of domestic violence. She also told the police that defendant had previously confessed to her that in 1991, with the assistance of his brother, he had stabbed to death a drug dealer in Denver. She related the details of the murder defendant had described to her. This included his admission that, contrary to a story he had earlier told her about being cut on the wrist by a piece of glass, he had been cut on the wrist by his knife during a struggle with the victim.

A police investigation in Denver revealed that the details of the murder related by defendant's wife were consistent with existing evidence, that "markers" in bloodstains discovered on the carpet of a van owned by defendant's brother were consistent with those in the victim's blood, and that defendant had been in Denver at the time of the murder. Defendant was arrested, charged with murder, and tried in Denver.

In his testimony at trial, defendant acknowledged that both he and his brother had at times purchased crack cocaine from the victim and that he had seen the victim earlier in the day, before the killing took place. He further testified, however, that on the night of the murder he had been at his mother's home all night. It was while he was cleaning the house in anticipation of her return from a hospital stay that he had cut his wrist on a piece of glass. The jury found to the contrary and convicted defendant of murder.

I.

Defendant first asserts that the trial court erred in applying Colorado spousal privilege law, rather than Oregon law, and that, even if Colorado privilege law applied, the statute limiting the scope of the privilege in certain felony cases is unconstitutional. We disagree.

Section 13–90–107(1)(a)(I), C.R.S. (1987 Repl.Vol. 6A) provides that during a marriage, a spouse, without the consent of the other spouse, may not testify for or against the other spouse and that, either during or following the marriage, one spouse may prohibit the other spouse from testifying as to confidential communications made during the marriage. *See Burlington Northern R.R. Co. v. Hood,* 802 P.2d 458 (Colo.1990); *People v. Lucero,* 747 P.2d 660 (Colo.1987).

However, § 13–90–107(1)(a)(II) narrows the scope of the privilege by providing that only the spouse testifying may assert the privilege if the case involves a class 1, 2, or 3 felony. Hence, a spouse accused of one of these three classes of felonies may not prevent the other spouse from testifying, even

as to confidential communications made during the marriage. *See People v. Delgado*, 890 P.2d 141 (Colo.App.1994).

In contrast, Oregon's statutory spousal privilege permits a spouse to invoke the privilege and prevent the other spouse from disclosing any confidential communications made between them during the marriage. Ore.Rev.Stat. § 40.255, Rule 505(2) (1991). Hence, as defendant argues, had Oregon law applied, his wife could not have testified at trial regarding his alleged confession.

### A.

Defendant contends the trial court erred in applying Colorado law because Oregon had the most significant relationship to the communication. We conclude the trial court properly applied Colorado law.

■ Colorado statutes provide no directive for resolving choice-of-law issues in the context of spousal privileges. The trial court adopted the analytical approach set forth in the Restatement (Second) Conflict of Laws § 139(2) (1971). Neither party challenges the use of that approach, and we agree that it provides an appropriate framework for analysis. *See Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 198 Colo. 444, 601 P.2d 1369 (1979); *First National Bank v. Rostek*, 182 Colo. 437, 514 P.2d 314 (1973).

Restatement § 139(2) provides as follows: Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect.

Hence, barring the existence of "some special reason," the trial court properly applied Colorado's statutory privilege.

■ In determining whether a sufficient reason exists to apply Oregon law and exclude the wife's testimony, the factors to be considered include: (1) the number and nature of the contacts that the state of the forum has with the parties and with the transaction involved; (2) the relative materiality of the evidence sought to be excluded; (3) the kind of privilege involved; and (4) fairness to the parties. *See Restatement*, *supra*, § 139 comment d.

■ Here, defendant argues that Oregon, which is where the communication was made, has the most significant relationship with the communication. However, even so assuming, we are aware of no authority supporting the proposition that a "special" reason exists for applying the law of another state merely because it had the most significant relationship with the communication, regardless of the interests of the forum state.

Although the communication occurred in Oregon, it directly concerned a serious crime allegedly committed by defendant in Colorado. The victim was a citizen of Colorado. Defendant was charged in Colorado, and Colorado obtained personal jurisdiction over him. As noted by the trial court, the wife's testimony was "extraordinarily important evidence." Finally, the record does not suggest that defendant knew of or relied on the Oregon privilege in making the statements to his wife or that the testimony of the wife, who appeared without subpoena, was anything other than voluntary.

In light of Colorado's interests as the forum state, and in light of the supreme court's admonition that "[i]n general, the law of the forum state determines whether or not evidence is admissible," *see Union Supply Co. v. Pust*, 196 Colo. 162, 583 P.2d 276 (1978)(fn.8), we conclude the trial court properly applied Colorado's statutory privilege in allowing the wife to testify about defendant's confession to her. *See People v. Doe*, 105 Misc.2d 84, 431 N.Y.S.2d 879 (N.Y.Sup.Ct.1980); *State v. Kennedy*, 134 Wis.2d 308, 396 N.W.2d 765 (App.1986).

### B.

Defendant alternatively asserts that, even if Colorado privilege law was applicable, § 13–90–107(1)(a)(II) violates a constitutional right to privacy in confidential marital communications. We disagree.

■ The marital privileges developed from the common law, without reference to any constitutional right. *See Port v. Heard*, 764

F.2d 423 (5th Cir.1985); *United States v. Lefkowitz,* 618 F.2d 1313 (9th Cir.1980). To the extent that confidential marital communications might be considered to fall within a constitutionally protected zone of privacy, such a zone does not extend so far as to outweigh a state's interest in the voluntary testimony of a spouse about a murder committed by another spouse. *See LaRoche v. Wainwright,* 599 F.2d 722 (5th Cir.1979)(no need to extend right of privacy, based as it is on "penumbras and emanations" of other more explicit constitutional rights, to evidentiary matters protecting marital relationships, long thought to be uniquely within regulatory province of the states); *United States v. Doe,* 478 F.2d 194 (1st Cir.1973)(marital privilege particularly an area where desirable changes may be introduced).

## II.

Defendant next contends the trial court abused its discretion in excluding hearsay statements that implicated someone other than defendant. We disagree.

Relevant evidence is evidence which tends to make the existence of any fact that is of consequence to the action more probable or less probable than it would be without the evidence. CRE 401; *People v. Carlson,* 712 P.2d 1018 (Colo.1986); *People v. More,* 668 P.2d 968 (Colo.App.1983). The trial court is vested with wide discretion in determining the relevancy of proffered evidence. *People v. Lowe,* 660 P.2d 1261 (Colo.1983); *People v. Carlson,* 677 P.2d 390 (Colo.App.1983).

Here, an informant had reported to police in March 1992 that a friend told her the friend's boyfriend (declarant) had been involved in a killing. The informant stated to police that, according to her friend, the declarant and another person had confronted a drug dealer who had sold them some bad drugs. When the drug dealer refused to return their money, the declarant and the other person stabbed the drug dealer, wrapped him up and put him in their car, and dumped him in an alley.

Initially, the informant told the police the killing had occurred in November, but that she was unsure whether it was 1990 or 1991. At a meeting with the police later that month, however, the informant was sure the killing her friend had told her about had occurred in 1990. She was positive about the year because she had started a new job in April of 1991, and the conversation had been several months before that.

At trial, defendant sought to admit the declarant's hearsay statements as statements against interest under CRE 804(b)(3). At a hearing outside the presence of the jury, the testimony of the informant and the friend differed in substantial respects. In particular, while the friend admitted the declarant had told her about a problem in a drug transaction, she denied that the declarant had confessed any murder or that she had told the informant about any such confession. However, the testimony of the two witnesses was consistent in that both placed the time frame for the events they described in 1990.

The informant also testified the declarant had later admitted to her killing a drug dealer. However, she provided neither details nor a time frame for the murder confessed to her.

The trial court ruled none of the testimony was relevant. It further determined that, even if the declarant's statements to the friend were relevant, as testified to by the friend at the hearing they were not against penal interest and therefore did not fall within the scope of CRE 804(b)(3).

We agree with the trial court that the testimony at the hearing did not present relevant evidence. Both the informant and the friend testified that the incident involving the boyfriend and the drug dealer occurred in 1990. It is undisputed that, here, the victim was killed in 1991. Further, nothing in the declarant's confession to the informant linked that supposed murder with the 1991 murder. Hence, none of the evidence presented at the hearing tended to prove or disprove a material fact in issue at defendant's trial.

Defendant on appeal contends he was entitled to present the testimony as prior inconsistent statements. However, because the assertion was raised for the first time in

defendant's reply brief, we do not address it. *See People v. Czemerynski,* 786 P.2d 1100 (Colo.1990).

We therefore find no reversible error in the trial court's exclusion of the evidence defendant sought to introduce through the two witnesses. *See People v. Botham,* 629 P.2d 589 (Colo.1981); *People v. Mulligan,* 193 Colo. 509, 568 P.2d 449 (1977) (testimony properly excluded when defendant failed to link other person with crimes charged); *People v. White,* 632 P.2d 609 (Colo.App.1981)(evidence offered to prove other persons committed murder not relevant without a direct connection with the murder for which defendant is charged).

### III.

■ Defendant next contends the trial court erred in admitting testimony in violation of his physician-patient privilege under § 13–90–107(1)(d), C.R.S. (1996 Cum.Supp.). We conclude that, to the extent the physician provided any evidence beyond the scope of defendant's waiver of the privilege, its admission was harmless.

The day after the victim was killed, defendant sought treatment from a physician for a cut to his wrist. At trial, defendant asserted the physician-patient privilege prevented the doctor from testifying. The trial court, however, ruled that defendant had waived the physician-patient privilege by revealing to his wife the reason he sought treatment.

The physician then testified he treated defendant the day following the killing, described the injury, and related defendant's explanation that he had been cut by a piece of glass. The physician then offered the opinion that defendant's injury was consistent with either a knife cut or a cut received from a piece of glass.

The information disclosed by the physician addressed the same subject matter as defendant's disclosure to his wife in his confession. *See People v. Lindsey,* 805 P.2d 1134 (Colo. App.1990) *overruled on other grounds, People v. Milton,* 864 P.2d 1097 (Colo.1993)(testimonial privilege may be waived by voluntary disclosure of confidential information to another). Further, at no time did the physician

imply that defendant was involved in the killing or was lying in reporting the source of his injury. Indeed, the physician's testimony was consistent with defendant's theory of the case. Hence, even if some part of the physician's testimony was beyond the scope of defendant's waiver, error in its admission was harmless. *See People v. Bowman,* 812 P.2d 725 (Colo.App.1991); *cf. Stauffer v. Karabin,* 30 Colo.App. 357, 492 P.2d 862 (1971).

### IV.

Defendant's next assertion is that the trial court erred in admitting evidence of other acts, crimes, or wrongs through the testimony of his wife, another witness, and himself. Again, we disagree.

Evidence that the defendant committed another crime, act, or wrong is not admissible to prove the defendant's guilt with respect to the crime charged. However, such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. CRE 404(b); *see People v. Miller,* 890 P.2d 84 (Colo.1995); *People v. Garner,* 806 P.2d 366 (Colo.1991).

Here, defendant's wife testified that he was "more volatile, secretive, [and] more verbally abusive" upon his return from Denver and that she felt her life was in danger. She described one incident during which defendant knocked her over in a recliner chair, retrieved butcher knives from the kitchen, and, holding one to his own throat, told her to "just take the knife and kill me." On the day she called the police, she feared defendant would take money she had to pay the rent or would cut off her finger to retrieve her wedding rings so he could sell them to obtain money for drugs.

■ No objection was raised to any of this testimony. Hence, our review is limited to determining whether admission of the evidence constitutes plain error within the meaning of Crim.P. 52(b). Plain error has occurred when, after review of the entire record, we can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious

doubt on the reliability of the judgment of conviction. *Moore v. People,* 925 P.2d 264 (Colo.1996).

Here, the evidence, among other things, provided an explanation of why defendant's wife called the police and, when he was arrested, disclosed his confession. Nor was it entirely prejudicial: the evidence also disclosed a possible motive, such as fear or retaliation, for the witness to fabricate the story of defendant's confession. We conclude that error, if any, in its admission did not undermine the fundamental fairness of the trial or cast serious doubt on the reliability of the judgment of conviction.

Defendant further argues the trial court failed to follow the proper four-part analysis for admitting the evidence as suggested in *People v. Spoto,* 795 P.2d 1314 (Colo.1990). While we agree that the better practice is to follow that procedure, a trial court's failure to do so, *sua sponte,* likewise does not constitute plain error. *See People v. Harris,* 892 P.2d 378 (Colo.App.1994); *People v. Taylor,* 804 P.2d 196 (Colo.App. 1990).

Finally, defendant's challenge to questions asked of other witnesses ignores that no evidence was introduced through them. On cross-examination, the prosecutor asked a witness if he knew about defendant's "explosive anger and frequent outbursts." Before the witness answered the question, however, defense counsel objected and the trial court sustained the objection.

Similarly, when the prosecutor questioned defendant on cross-examination regarding the incidents described by defendant's wife, defendant denied the incidents occurred. Although these questions were asked in the presence of the jury, the jury was instructed at least twice that what the attorneys said was not evidence.

Absent a showing to the contrary, we presume the jury heeded the court's instructions. *People v. Moody,* 676 P.2d 691 (Colo. 1984). Hence, we find no reversible error in the examination of either the witness or defendant.

## V.

Defendant's next contention is that the trial court abused its discretion in permitting the prosecution to use a knife as demonstrative evidence. He argues the knife was not relevant to any material issue and that, even if relevant, its probative value was substantially outweighed by the danger of unfair prejudice. We are not persuaded.

The use of models or articles of similar design for purposes of demonstration is within the discretion of the trial court. *Hampton v. People,* 171 Colo. 101, 465 P.2d 112 (1970); *People v. LeMasters,* 666 P.2d 573 (Colo.App. 1983). We will not disturb the trial court's ruling in the absence of an abuse of that discretion. *Bebber v. People,* 160 Colo. 60, 414 P.2d 131 (1966).

Here, the knife used to kill the victim was never found. However, the wife testified that defendant confessed killing the victim with a kitchen knife. The knife used for demonstrative purposes was a common kitchen knife.

The coroner testified that, although the actual murder weapon could have possessed different characteristics, the knife used as demonstrative evidence was consistent with the type of weapon which caused the victim's wounds. Likewise, the emergency room physician testified that defendant's wound, while consistent with a cut received from a piece of glass, was also consistent with a wound from a knife like that used for demonstrative evidence.

The knife served to illustrate for the jury the general type of weapon used to commit the murder. We cannot say it was without any relevance.

Furthermore, the trial court did not admit the knife as trial evidence or permit the jury to take the knife into the jury room during deliberations. Nor did the prosecutor assert, either in examination or closing argument, that the knife was the murder weapon or attempt to link it to defendant in any way. Nor has defendant argued that the knife was of a type that was particularly likely to inflame the passions of the jury.

In these circumstances, not only did any prejudice not outweigh the relevance of the evidence, it did not impact defendant's substantial rights. *See Topping v. People,* 793 P.2d 1168 (Colo.1990)(an asserted error in admission of evidence does not require reversal if error is harmless beyond a reasonable doubt); *People v. Martinez,* 734 P.2d 650 (Colo.App.1986).

## VI.

Defendant maintains his motion for acquittal should have been granted because the evidence was insufficient to prove he was the person who killed the victim. We disagree.

■ A motion for judgment of acquittal will be denied unless the prosecution has failed to present evidence which, when viewed in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the crime charged beyond a reasonable doubt. *People v. Brassfield,* 652 P.2d 588 (Colo.1982); *People v. Graham,* 678 P.2d 1043 (Colo.App. 1983).

■ Defendant argues that his wife's testimony at trial concerning his confession was inherently unreliable because of her own prior convictions and because she only reported his confession when she wanted him removed from the house. However, the details of the murder she learned from defendant were consistent with other evidence of the crime introduced at trial. Her reliability and credibility, as well as the weight to be given her testimony, were issues to be resolved by the jury. *See People v. Gonzales,* 666 P.2d 123 (Colo.1983); *People v. Brassfield, supra.*

In addition, two of defendant's friends testified at trial that defendant had admitted he stabbed and killed a drug dealer in Denver. Finally, according to a medical expert, among those of the victim's race only four percent possess the genetic markers present in the victim's blood and in the blood found in the van owned by defendant's brother.

Viewed as a whole, the evidence was sufficient to permit a jury to infer that defendant committed the crime. *See People v. Brassfield, supra; People v. Williams,* 827 P.2d 612 (Colo.App.1992); *People v. Lagunas,* 710 P.2d 1145 (Colo.App.1985).

## VII.

Defendant next asserts the prosecution improperly shifted the burden of proof to him during closing argument by stating that "the only thing that really is in dispute is the defendant and whether he did it or not." We are not persuaded.

Because defendant did not object to the statement at trial, we again review his contention under a plain error standard. Crim.P. 52(b); *Moore v. People, supra.*

■ Here, the prosecutor's argument did not suggest the prosecution was relieved from proving some of the elements of the crime charged. Rather, the argument suggested the evidence clearly established all the other elements beyond a reasonable doubt, and the jury's verdict turned on its finding as to identity. Indeed, defense counsel argued in closing that, although the prosecution had proved beyond a reasonable doubt the victim was murdered and a knife was the weapon used, it had failed to prove defendant was the person who killed the victim. Moreover, the jury was instructed numerous times the prosecution had the burden to prove beyond a reasonable doubt that defendant had committed each element of the crime charged, and we assume the jury heeded those instructions. *See People v. Moody, supra.*

In these circumstances, the prosecutor's closing argument did not undermine the fundamental fairness of the trial itself or cast serious doubt on the reliability of defendant's judgment of conviction. *See People v. Bowring,* 902 P.2d 911 (Colo.App.1995).

## VIII.

Lastly, defendant asserts the cumulative effect of errors at his trial deprived him of a fair trial. Although numerous formal irregularities may in the aggregate deprive a defendant of a fair trial, the record here demonstrates that, to the extent any errors occurred, they did not, individually or cumulatively, prejudice defendant's substantial

rights or deny him a fair trial. *See People v. Roy,* 723 P.2d 1345 (Colo.1986); *People v. Rivers,* 727 P.2d 394 (Colo.App.1986).

Judgment affirmed.

HUME and KAPELKE, JJ., concur.