[No. 6510.]

MORTON v. LAESCH.

1. APPEALS, AND WRITS OF ERROR—*Practice*—A, motion to strike out a bill of exceptions must be seasonably made; if not interposed until months after the objecting party has filed his brief upon the merits of the cause it will not be entertained—(544).

2. ——*Second Appeal—Law of the Case*—What is declared upon a question essential to the decision, upon a first appeal or writ of error, is the law of the case, and will not be departed from, upon a second appeal—(545).

3. ——*Findings on Conflicting Evidence*, will not be disturbed—(545).

4. TENANTS IN COMMON—*Rights in the Common Property*—One co-tenant using the common property for his exclusive benefit is liable to the other for the reasonable value of the use of the latter's interest—(545).

5. EVIDENCE—*Sufficiency*—Plaintiffs and defendants were tenants in common of a mining claim through which a tunnel had been excavated. Defendant had for a considerable time removed, through this tunnel, the waste rock from other mining premises owned by him in severalty. Plaintiff brought an action to be compensated for this inordinate use of the common property. The tunnel was less than fifteen hundred feet in length. Defendant excavated more than one thousand feet thereof, and laid the tracks through the whole length of the tunnel, at his own cost, and he provided the power and the cars used in removing the waste from his private premises. *Held*, that evidence that what the owners of other tunnels of much greater length charged, per ton, for removing waste, they furnishing the cars by which the removal was effected, and the power by which they operated, transporting, dumping and returning such cars, afforded no basis for a computation as to what defendant should be required to pay—(546-548).

*Appeal from Clear Creek District Court.*—HON. FLOR ASHBAUGH, Judge.

Mr. A. D. BULLIS and Mr. F. L. COLLOM, for appellant.

Messrs. MORRISON & DESOTO and Messrs. MORRISON & BAILEY, for appellee.

Mr. JUSTICE GABBERT delivered the opinion of the court:

The parties to this appeal are joint owners (each an undivided one-half) of the Elida lode mining claim. Mrs. Laesch is the owner of, or interested in, adjoining claims. Mr. Morton owns a group in the vicinity of the Elida, known as the Jo Reynolds. At the time he became interested in the Elida, a tunnel had been run on that claim a distance of about 324 feet. He desired to work the Jo Reynolds group through the Elida, and claims to have made a parol agreement with Mrs. Laesch to the effect that he would repair the old workings, which were then caved in, more or less, improve the grade, and extend the tunnel to the end-line of the Elida, lay a track therein at his own expense, and through this tunnel and the extension thereof to the Jo Reynolds, work the latter. In consideration of the use of the Elida ground for this purpose, Mrs. Laesch should have the right to utilize the tunnel in the Elida ground to work that property, or those adjoining, in which she was interested, without expense to her. Morton put the old workings in the Elida in good shape at an expense of over eight hundred dollars, and extended the tunnel through the Elida ground a further distance of 1,076 feet, and laid a track throughout the entire length of the tunnel at his own expense, in the sum of ten thousand dollars. He also extended the tunnel to the Reynolds group, and worked the property through this tunnel and the one through the Elida. All material removed from the Reynolds group was moved at his own expense. Mrs. Laesch, for the period of between two and three months, worked the adjoining prop-

erties in which she was interested through the old work-ings in the Elida which Morton had repaired, using the track which he had placed therein. For this use of the tunnel she paid nothing, nor did she promise to pay any-thing. After the work on the Jo Reynolds had pro-gressed for a considerable period, she demanded that Mor-ton pay her for the use of the tunnel through the Elida. This he refused to do, and she then brought suit for an accounting, the purpose of which was to compel Morton to pay her a reasonable compensation for the use of the tunnel in working the Reynolds group through the Elida ground.

The trial of the case the first time resulted in a judg-ment in favor of the defendant based upon the ground that the parol agreement pleaded as a defense, as above stated, was established. Plaintiff brought the case to this court for review, where, in 38 Colo. 171, we held that an oral agreement for a perpetual right of way over the premises of another constitutes an easement or interest in land, and is within the statute of frauds, and to take it out of the statute, it must be supported by clear, definite and conclusive proof; and as the evidence did not establish this degree of proof, the judgment was reversed and the cause remanded for a new trial. We also held, on the authority of People ex rel. v. District Court, 27 Colo. 465, that an owner of an undivided interest in a mining claim has no right to use the tunnel on such claim to con-vey ore from an outside claim. A re-trial of the cause re-sulted in a judgment in favor of plaintiff in the sum of $5,840.00, from which the defendant has appealed.

Three propositions are advanced by counsel for ap-pellant in support of their contention that the judgment of the trial court should be reversed: (1) That the evi-dence establishes the parol agreement pleaded; (2) that

under the facts of the case the plaintiff is estopped from making any claim for compensation; and (3) that the evidence is insufficient to support the judgment rendered.

Counsel for appellee have filed a motion to strike the bill of exceptions, based upon the ground that it was never filed in the district court; that it does not appear to be the original bill, or copy thereof, and that it is not certified by the clerk of the court from which the appeal is taken. We shall consider this motion first, for the reason, that, if it should be sustained, the grounds upon which the appellant relies for reversal of the judgment are not before us for consideration.

The case was docketed in this court and the bill of exceptions filed April 14, 1908. July 23rd following, counsel for appellant filed their abstract of record; and on August 22nd, 1908, their opening brief. To this brief counsel for appellee filed their brief October 26, 1908, and appellant's reply brief was filed November 21 following. The motion to strike the bill of exceptions was not filed in this court until August 18, 1911. A motion to quash or strike out a bill of exceptions must be seasonably made, or it will not be considered. 3 Cyc. 52. In the case at bar, the motion under consideration was not interposed until two years and nine months after the case was at issue. In such circumstances, the motion was not seasonably made, and for this reason will be overruled.— *City of Central v. Wilcoxen,* 3 Colo. 566; *Learned v. Tritch,* 6 Colo. 579; *Reynolds v. Campling,* 21 Colo. 86; *Ritchey v. The People,* 23 Colo. 314; *Mackey v. Monahan,* 13 Colo. App. 144; *Board Co. Commrs. v. Tulley,* 17 Colo. App. 113; *Merriner v. Jeppson,* 19 Colo. App. 218; *Greig v. Clement,* 20 Colo. 167; *Murphy v. Cunningham,* 1 Colo. 467.

As far as advised, the testimony at the second trial on the subject of the parol agreement, upon which defendant relies, is no different nor any more clear, definite and conclusive, than it was at the first trial, and we must, therefore, hold that the finding of the trial court on this subject cannot be disturbed. Aside from this, the trial court resolved the issue in favor of the plaintiff on conflicting evidence, and for this reason, that finding must stand.

In the former opinion it does not appear that the question of estoppel was directly considered, or that it was involved, as our decision at that time appears to have been based upon the two propositions we have mentioned. Plaintiff was not estopped from asserting that an easement was not granted by parol, although it might be that she would be estopped from maintaining an action to enjoin the defendant from using the tunnel through the Elida for the purpose of working the Reynolds group, provided he offered to pay a reasonable compensation for the use of her interest in the tunnel for that purpose; but as that proposition is not argued by counsel we shall not attempt to decide it at this time, or express any opinion thereon.

The cause of action stated in the complaint is one for an accounting between tenants in common, the right to the accounting being based upon the ground of the greater use by one co-tenant for his benefit than the other, of the common estate. Under the law of the case as declared when the cause was here before, the action may be maintained, provided, of course, the evidence is sufficient to sustain it. We are also of the opinion that in such a case a co-tenant making use of the common estate for his exclusive benefit, according to the facts of this case, must recompense his co-owner for what such use of the interest of the latter is reasonably worth.—*Whitwham v.*

*Westminster Brymbow C. & C. Co.,* 2 L. R. Ch. Div. 538; *Bunke v. N. Y. Telephone Co.,* 91 N. Y. Supp. 390; *Bunke v. N. Y. Telephone Co.,* 97 N. Y. Supp. 66; affirmed in 188 N. Y. 600; *DeCamp v. Bullard,* 159 N. Y. 450; *McWilliams v. Morgan,* 75 Ill. 473; *Baltimore & Ohio R. R. Co. v. Boyd,* 67 Md. 32.

It was sought to establish the value of this use (1) by showing the number of tons of rock the defendant had transported through the tunnel in the Elida from the Jo Reynolds; and (2) by showing what other tunnel companies in the vicinity charged for such transportation per ton. It is not altogether clear what the number of tons so transported may have been, but we do not regard that as material, in view of the fact that the evidence touching what the use of plaintiff's interest in the tunnel was reasonably worth per ton to transport the rock from the Jo Reynolds is wholly insufficient to support the judgment rendered or any judgment whatever against defendant. Inquiry on the subject is, what is fit and proper for defendant to pay for way-leave for the use to which he subjected the tunnel in the Elida ground? It stands undisputed that all rock transported through this tunnel was what is termed waste; that is, did not contain minerals in sufficient quantity to be of any commercial value.

A witness on behalf of plaintiff testified that the company owning the Empress tunnel, which was about 3,000 feet in length, charged twenty-five cents per car for waste. Another witness for plaintiff stated that the charge made by the Newhouse tunnel, which was something like eight thousand feet in length, was from forty-five to forty-six cents per ton for waste. It also appears from the evidence that the Big Five tunnel had a schedule for the transportation of waste up to the length of 7,500 feet, but the schedule per ton is not stated. Each

of these tunnels was what might be termed "commercial tunnels," and was constructed by the company owning or operating it for the purpose of transporting ore and waste from the mining properties which the respective tunnels intersected. Each of these companies had constructed its tunnel, owned the cars and tracks, and furnished the motive power, and as to one of the companies, at least, loaded the cars, and in each case transported the loaded cars to the mouth of the tunnel, dumped them, and returned them empty to the place where they were loaded. These facts furnish no basis from which to compute what defendant should pay per ton. He had constructed the tunnel at his own expense, laid the track therein, loaded, moved and dumped the cars. Plaintiff was at no expense whatever in any respect. The distance the cars were transported through the Elida was about fourteen hundred feet, as compared with the three thousand feet haul of the Empress tunnel, eight thousand feet, the length of the Newhouse tunnel, and seventy-five hundred feet, the length of the Big Five tunnel. Clearly, under these facts, what sum per ton plaintiff would be entitled to recover for the use of the Elida tunnel, her interest being but an undivided one-half, could not be computed, and any attempt to do so would rest on mere conjecture.

It is evident that if reliable data was furnished which would serve as a basis upon which to compute what plaintiff would be entitled to receive per ton, taking into consideration the length of the Elida tunnel, as compared with the length of the haul in the other tunnels mentioned, the cost of construction and operation, and that defendant furnished the cars and track, and moved them without any expense whatever to the plaintiff, that the amount she would be entitled to receive per ton would be very materially reduced from that charged by the com-

mercial tunnels to which we have referred.

It also appears that for the space of between two and three months plaintiff utilized for her benefit alone 324 feet of the tunnel for the transportation of ore or waste from the properties in which she was interested. She should certainly account to the defendant for the value of this use, for his interest therein.

On the authority of *Hennessey v Hoag,* 16 Colo. 460, it is contended by counsel for appellant that an action for use and occupation cannot be maintained except it appears the relation of landlord and tenant existed between the parties. They also contend that in the absence of a statute or agreement to the contrary, a tenant in common, while merely in possession of the common property, not excluding his co-tenant, nor denying him equal enjoyment, cannot be charged by the latter for use and occupation. For these reasons it is contended the action at bar cannot be maintained. We do not deem it necessary to discuss these questions. The law of the case, as declared when the cause was here before, is to the effect that defendant must recompense plaintiff for the use of her interest in the tunnel for transporting rock from an outside property. The determination of this question was essential to a decision of the case, as then presented. Questions of law before the court for decision and by the court decided as essential to a final judgment, are conclusively and finally adjudicated, and cannot be changed upon a subsequent appeal.

The judgment of the district court is reversed and the cause remanded for a new trial.

*Reversed and Remanded.*

Mr. JUSTICE MUSSER and Mr. JUSTICE HILL, concur.

Decided April 1, A. D. 1912. Rehearing denied July 1, A. D. 1912.