No. 14,508.

DANDO COMPANY *v.* MANGINI.
(109 P. [2d] 1055)

Decided January 6, 1941.   Rehearing denied February 3, 1941.

Mr. B. F. Reed, Mr. R. H. Walker, for plaintiff in error.

Mr. J. W. Kelley, Mr. Charles E. Coughlin, for defendant in error.

*En Banc.*

Mr. Justice Young delivered the opinion of the court.

This case is before us for the second time. The opinion on the former review, *Mangini v. Dando Company,* 101 Colo. 453, 74 P. (2d) 675, contains a statement of the pleadings and the evidence as of that time, and should be read in connection with our present pronouncement. Upon retrial the plaintiff had judgment, and the Dando Company prosecutes a writ of error to secure a reversal. Numerous errors are assigned, of which we deem it necessary to consider but two, namely, the first and fifth, which are as follows:

"1. The court erred in overruling the motion of the defendant below, the plaintiff in error, for a directed verdict in favor of the defendant."

"5. The court erred in not holding and ruling upon defendant's motion for a directed verdict that the agreement upon which the plaintiff relies was made by the plaintiff and Ramon Solis for the purpose of deceiving the defendant corporation itself, and with the understanding that knowledge of it should be withheld from the defendant corporation, and in not holding and ruling that such agreement was void and could not have been the agreement of the corporation."

The matter here urged most strenuously as a ground for reversal of the judgment, namely, that the contract is violative of the public policy of the state and that the courts should not lend their aid to its enforcement, was not suggested when the case was formerly before us, and any language used in our former opinion was not

intended to apply and should not be construed as applying to the propriety of the court lending its aid to the enforcement of such a contract. The trial court evidently was of the opinion, and with some justification therefor in view of the language used in the opinion, that we passed upon that phase of the case. We were then of the opinion, that under the evidence as presented, such issue was not necessarily involved, nor did it appear that the action of the plaintiff necessarily constituted a fraud against, or that it proximately resulted in damage to, the Dando Company.

■ We are aware of the rule—which we recognize—that the pronouncement of an appellate court on an issue in a case presented to it becomes the law of that case, but the rule does not extend to matters other than those which in fact were decided upon issues presented and considered in the initial review, and for this reason we have pointed out the limitations that should be placed upon our former adjudication.

■ There was in the case as first reviewed evidence of a contract between plaintiff and Ramon Solis to the effect that plaintiff should make certain investigations for Solis and that in consideration therefor he would pay off a note secured by a deed of trust on her home. Plaintiff testified that she made the investigations; that Solis liquidated the note which, with the mortgage securing its payment, he gave to her; and that the paid note and mortgage were in her possession and control so that she might have released the mortgage or not as she saw fit. The evidence disclosed that the note was paid with a Dando Company check drawn by Solis, but if the latter had no authority so to use company funds that was a matter for an accounting between him and the company, since the use of the company's money was not shown to have been contemplated by the contract between plaintiff and Solis. Under the recorded evidence previously presented at this point the first contract appeared to have been consummated. Whether plaintiff had knowl-

edge of an assignment of the note by the Behneman Company to the Dando Company was not material. That was procured by Ramon Solis, not by her. That the note should be delivered to Ramon Solis to be kept in the Dando Company files was not agreed upon between plaintiff and Ramon Solis, as the evidence was presented at the first trial, until after the contract between her and Solis was completed by his payment of the note. Up to this point the conduct of plaintiff, as then disclosed by the evidence, is explainable on a theory not necessarily involving any fraudulent intentions, purposes, or effects, as related to the Dando Company or any of her possible future creditors. In the first trial plaintiff testified that it was upon the subsequent suggestion of Ramon Solis that she delivered the papers to him to be placed in the files of the Dando Company. There was nothing in the record at that time to indicate that the fact that the note was paid was to be concealed from others interested in the affairs of the Dando Company. Under such state of the record nothing that plaintiff did could be construed as being in any way responsible for the use of the company's money by Ramon Solis to pay her note. As far as she was concerned, a jury reasonably might have inferred that the subsequent delivery of the note to the company and her subsequent action with respect thereto did not have the effect of placing it in any other or different position financially, or that such action was the proximate cause of any damage to it; that the company therefore neither gave consideration for a bailment of the paid note nor suffered damage referable to any fraudulent intentions or actions of the plaintiff with respect thereto. Aside from the question of public policy, not argued on the former review as previously noted, plaintiff's action in paying interest with money which she says was given to her by Ramon Solis, and in executing an extension, did not injure the company or place it in any worse position than if she had done neither or had kept the note and

mortgage in her own desk where she first lodged them. Aside from any question of the contract being violative of public policy, there was a clear case for the jury under the evidence in the record first presented here. Though the nature of the story told by plaintiff on the former trial was not calculated to impress the court with its truth, the determination of its truth or falsity was the province of the jury.

The variation between plaintiff's testimony in the first trial and the second is not great, but the record before us contains statements and admissions which, in the light of the different inferences which now properly might be drawn from other facts in evidence here and on the first trial, makes the conflict of vital significance in a consideration of the question of the legality of the transaction disclosed.

The testimony of the plaintiff, as given in the second trial and contained in the present record, contains her statement that it was understood and agreed between Ramon Solis and herself before he procured the note and mortgage from the Behneman Company that they should be kept in the file of the Dando Company as an apparently valid and subsisting obligation, and that Solis should not disclose to any others interested in said company that it was a paid note to be returned to her on demand and was not in fact a valid and subsisting obligation. As has been mentioned, such was not the testimony of the plaintiff on the first trial, nor were such facts reasonably to be inferred from her testimony given at that time. That the fact was not known to others interested in the company appears from the uncontradicted and unimpeached evidence in the record of the second trial, now under consideration, of the other officers and stockholders who testified in behalf of defendant. It thus appears that not only did plaintiff and Ramon Solis intend that such fact should be concealed from these others, but it was concealed from them and they remained in ignorance of it.

■ ■ In the light of these subsequent developments there is no escape from the conclusion that plaintiff and Ramon Solis agreed, before anything was done toward taking up the note and mortgage, that the Dando Company—which plaintiff doubtless thought was a *one-man company,* but which the undisputed evidence shows not to have been such—should be made an unknowing agency to carry into effect their agreement to maintain the note and mortgage as an apparently valid and subsisting obligation. With this purpose in the minds of both, Dando Company money was used to pay the Behneman Company for the note, and plaintiff says she saw the check, which was a company check. An assignment of the note and mortgage was made to the Dando Company; they were placed in its files, and a record made of the transaction in the company books. Interest was paid on the note by the owner of the property on which the mortgage was given to secure payment of the note. Later in 1934 an extension of the note and mortgage was made in which, over her signature, plaintiff acknowledged she was indebted to the Dando Company in the sum of $2,500. Under the record of the testimony as now before us, the scheme to use the Dando Company, and to conceal from all interested in the company other than Ramon Solis that it was being so used, had been mutually formed by Solis and plaintiff before the Dando Company check was used to procure the note. It may have been in settlement of a pre-existing completed legitimate contract to make the investigations which plaintiff testified she made; nevertheless it was Dando Company money that was used, and when it was used plaintiff knew that the Dando Company was to get a note which all connected with the company, except Solis, were led to believe that it would own as a valid obligation of plaintiff, but which in fact it would not own as such because of the contract between her and Solis in compliance with which he had paid it. To enter into such an agreement with Solis before any money

was paid; to have knowledge that the company and its money were thus to be used and those interested in the company kept in ignorance of the fact, is quite a different situation from one in which Solis merely used the check of a corporation of which he was president and which plaintiff supposed he controlled, to pay a contractual debt to her concerning which, for aught she knew, all others connected with the company might have full knowledge. In the one case, as heretofore stated, the company, if it was not owned and controlled by one man, would have to look to Solis, its unfaithful agent, if he exceeded his authority. In the other, a willing cooperator and beneficiary of the agent's unfaithful conduct certainly should not be permitted to ask to be relieved of sharing the burden of his wrongful acts, at the expense of the company, by reason of which, with full knowledge, she sought to benefit.

In the former case, as the record stood, plaintiff after consummating a legitimate transaction entered upon a course of dealing, even if with improper motives, which did not injure the company because, in a transaction then completed between plaintiff and Solis, the company already had been damaged, if at all, by the unfaithfulness of its president in exceeding his authority by an improper use of its funds. Under the record now before us the damage to the company, i.e., the unauthorized paying out of its funds, was an incident in the consummation of an agreement that necessarily operated as a fraud upon the company itself, to its damage independent of any matters of public policy. Similarly the payment of interest and the extension of the mortgage acquire a new and entirely different significance and permit, if they do not require, entirely different inferences to be drawn from them. They become the evidence of a continuing participation of the plaintiff in the plan of concealment from the officers of the company entered into prior even to the time when the company's money was used to procure the note.

█ In the light of the variation in the testimony, now disclosed, from that contained in the former record, we are of the opinion that, independent of the matter of public policy, a question which we did not in our former opinion and do not now decide, the conduct of plaintiff, as disclosed by her own testimony, was such as to preclude her from successfully asserting ownership of the note and mortgage, and from recovering damages for their alleged conversion. The defendant's motion for a directed verdict should have been sustained. The judgment is reversed and the cause remanded with instructions to set it aside and to enter judgment for defendant.

MR. CHIEF JUSTICE HILLIARD, MR. JUSTICE FRANCIS E. BOUCK, and MR. JUSTICE BAKKE dissent.

MR. JUSTICE BAKKE, dissenting.

No good purpose would be served by a repetition of the allegations of fact, which sufficiently appear in the complaint as set forth in the court's present and former opinions. The important question is whether they were sufficiently established to support the verdict. I think they were. The fact of plaintiff's employment by Ramon Solis is not seriously disputed, and though an attempt was made on cross-examination to discredit her testimony concerning said employment the jury believed her. I say it was not seriously disputed, by which I mean that a number of witnesses could have been called to contradict testimony regarding her employment as related. None was called, so I assume that defendant was satisfied in that regard. It is not seriously contended, nor is there any issue made therof, that $2,500 —or the cancellation of the indebtedness represented by the note in question in that amount—was not reasonable compensation for the services performed.

It is also undisputed that Ramon Solis paid the holder of the note with a $2,500 check of the company. How-

ever, that note was not endorsed to the company, although there was an assignment to it which described the note and trust deed. There is dispute as to whether that assignment was among the papers which Ramon Solis gave to plaintiff. It probably was not, but the copy that was to be delivered to plaintiff allegedly was to have been marked "void." However, that would not defeat the conversion, but be a part of it.

Complaint is made that we should not permit plaintiff to take advantage of the rule of evidence permitting one to testify against a corporation when that testimony would not be permitted against the deceased individual whose personal affairs had been incorporated. Counsel admit that is the rule and that plaintiff was qualified to testify under the circumstances. Counsel also well know that the remedy for the situation they describe lies with the legislature and not with the judiciary.

However, the rule is not so ill-founded as counsel seeks to make it appear, for it permits exposure of the conduct of individuals which, otherwise might, and could, be well concealed under the corporate name, and if a person sees fit to incorporate his business, the corporation assumes the disadvantages as well as the advantages of the corporate form.

Nor can it be logically urged that defendant was an innocent victim here, because during Ramon Solis's life he was the company so far as the conversion was concerned. That this was a "one-man" corporation is borne out by the fact that Ramon Solis and his family owned all the stock—their stock being a gift from him—Solis being the general manager and the daughters mere employees, although designated as officers, and Solis conducted the corporation like a household. Therefore, conversion by Solis became the conversion by the company. "In such cases the court 'will disregard the fiction of corporate entity apart from members of the corporation when it is attempted to be used as a means of

accomplishing a fraud or an illegal act'." *Gutheil v. Polichio,* 103 Colo. 426, 431, 86 P. (2d) 972.

Complaint is made of the failure of plaintiff's memory in regard to her testimony on the first hearing. My observation of the record convinces me that her memory was no worse or better than that of some of the witnesses for defendant, so that remains a factual issue for determination by the jury. As to the receipt, whether there actually was one, that too, was a matter for the jury under the circumstances, but it may be said that as to it, plaintiff was corroborated by her daughter.

Counsel for defendant admit they are not relying on the statute which permits setting aside agreements made to defraud creditors. With the removal of that feature, the case under the former decision becomes an out and out case for the jury, and while present counsel object to the instructions, no exception to giving them was reserved by counsel at the trial. To permit cases to be reversed in this court on the simple expediency of changing counsel on the way up is dangerous practice and succeeding counsel should be held to the record made by their predecessors.

There could be an elaboration of a number of things in this litigation which the trial judge summed up well when he said: "An old man in love with a young woman." We may not approve and there is not much we can do about it, but we should not permit "the old man's" family to be the direct beneficiary of his improper conduct, if any.

Mr. Chief Justice Hilliard and Mr. Justice Francis E. Bouck concur in this dissent.