Turene **LOMBARD and Pueblo School District # 60, Plaintiffs–Appellants,**

v.

**COLORADO OUTDOOR EDUCATION CENTER, INC., a Colorado non-profit corporation, d/b/a The Nature Place; and Sanborn Western Camps, Inc., a Colorado nonprofit corporation, d/b/a The Nature Place, Defendants–Appellees.**

No. 09CA2704.

Colorado Court of Appeals, Div. III.

Aug. 18, 2011.

James M. Croshal, Pueblo, Colorado; Mickey W. Smith, Pueblo, Colorado, for Plaintiff–Appellant Turene Lombard.

Ritsema & Lyon, P.C., Paul D. Feld, Denver, Colorado, for Plaintiff–Appellant Pueblo School District # 60.

Taylor | Anderson LLP, John M. Roche, Kevin S. Taylor, Jared E. Berg, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge ROY.

Plaintiffs, Turene Lombard (invitee) and Pueblo School District # 60 (school district), appeal from the judgment entered on a jury verdict and the order awarding costs in favor of defendants, Colorado Outdoor Education Center, Inc. and Sanborn Western Camps, Inc. (owners), in this action under section 13–21–115, C.R.S.2010 (premises liability act). We affirm the judgment, and affirm the order awarding costs in part and vacate it in part.

In February 2000 at the request of school district, invitee, a teacher employed by the district, attended an overnight training session which was held at a conference facility and resort owned and operated by owners. The resort had, among others buildings, eleven fourplex buildings, each unit of which had a main floor sleeping area, kitchenette, bathroom, and loft. Access to the loft was gained by a wooden ladder, with no handrails, that was fixed to the wall at the top and to the floor a distance from the wall at the bottom. In her unit, invitee climbed the ladder to the loft, which was equipped with a mattress, to read. She was injured when she fell descending the ladder.

Because invitee was within her scope of employment, she applied for and received substantial workers' compensation benefits. Invitee and school district brought a joint action against owners under the premises liability act.

Owners filed, and the trial court granted, a motion for summary judgment on the ground that there was no evidence that they knew or should have known of a dangerous condition on their property. Invitee appealed, and a division of this court affirmed. *Lombard v. Colorado Outdoor Educ. Ctr., Inc.*, 179 P.3d 16 (Colo.App.2007). On certiorari review, our supreme court reversed and remanded for trial. *Lombard v. Colorado Outdoor Educ. Ctr., Inc.*, 187 P.3d 565 (Colo.2008) (*Lombard*).

At trial, invitee presented evidence of the fall and the injuries she sustained. Through expert testimony, she presented evidence that the applicable building code required a code-compliant staircase for access to an upper floor habitable space, and that the acceptance of a ladder as an alternative design was not permitted by the building code because a ladder is not as safe as a staircase. She argued that owners knew or should have known the ladder was dangerous because it allegedly violated the building code.

Owners presented evidence that (1) they had no actual notice that the ladder constituted a dangerous condition; (2) the plans for the unit depicting the ladder access to the loft were approved by the county building department, which administered the building code; (3) the county building department issued a certificate of occupancy following the completion of construction; and (4) they had never received reports of any incidents involving, or injuries resulting from, the use of the ladders in the twenty-four years since the construction of the first units. In addition, there was conflicting evidence from which owners argued that invitee was negligent in her use of the ladder, and that her negligence was the cause of her injuries.

Following a seven-day trial, a jury returned a verdict for owners and responded to interrogatories on the verdict form as follows:

Question No. 1: Did the [plaintiffs] have injuries, damages and losses?

Answer No. 1: Yes

*Question No. 2: Did [owners] . . . actually know about a danger on their property or using reasonable care should have known about it?*

*Answer No. 2: No*

Question No. 3: Did the [owners] fail to use reasonable care to protect against the danger on their property?

Answer No. 3: No

Question No. 4: Was the [owners'] failure a cause of the [invitee's] injuries, damages or losses.

Answer No. 4: No

(Emphasis added.)

Owners sought costs jointly and severally against invitee and school district, which the trial court awarded. This appeal followed.

At the outset, we note that there was no dispute that invitee was a business invitee within the meaning of the premises liability statute and that she suffered injuries. Invitee's arguments focus on the jury's negative response to the second interrogatory. These arguments assert error with respect to (1) the instructions given or refused; (2) the trial court's refusal to admit into evidence plans for units constructed after the unit in question, which characterized the loft as "storage"; (3) the trial court's refusal to allow invitee to call a third expert witness on the building code; and (4) the trial court's failure to instruct the jury that an owner's duties under the premises liability act are not delegable.

## I. Premises Liability Act and Negligence Per Se

Because this case involves the relationship, if any, between the premises liability act and the common law doctrine of negligence per se, we deem it appropriate to begin with a discussion of that relationship after our supreme court's decision in *Lombard*.

Negligence is the failure to do an act a reasonably careful person would do, or the doing of an act which a reasonably careful person would not do, under the same or similar circumstances to protect oneself or others from bodily injury. *Lawson v. Safeway, Inc.*, 878 P.2d 127, 130 (Colo.App.1994); *Woolsey v. Holiday Health Clubs & Fitness Centers, Inc.*, 820 P.2d 1201, 1204 (Colo.App. 1991). A person bringing a negligence claim must establish a duty, a breach of that duty,

causation, and damages. *Redden v. SCI Colorado Funeral Services, Inc.*, 38 P.3d 75, 80 (Colo.2001); *Miller v. Byrne*, 916 P.2d 566, 577 (Colo.App.1995).

Negligence per se is a common law doctrine which provides that legislative enactments, such as statutes and ordinances, can prescribe the standard of conduct of a reasonable person, or duty, such that a violation of the statute or ordinance constitutes a breach of duty of care. *Lombard*, 187 P.3d at 573. A plaintiff may recover under a negligence per se theory if he or she can establish that the defendant violated the statutory standard of care, that the statutory standard of care was intended to protect against the injuries sustained, and that the violation was the proximate cause of the injuries sustained. *Id.* Negligence per se, therefore, serves to conclusively establish the defendant's breach of a legally cognizable duty owed to the plaintiff. *Id.*

Section 13–21–115(3)(c)(I), C.R.S.2010, establishes a standard of care owed by a property owner to an invitee: "an invitee may recover for damages caused by the landowner's *unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known.*" (Emphasis added.)

*Lombard* was decided in a summary judgment context. In that context, owners were required to show that there was no genuine issue as to any material fact, and that they were entitled to judgment as a matter of law. C.R.C.P. 56(c). Invitee, therefore was tasked to show through affidavits and other materials that there was a genuine issue as to a material fact and did so by producing evidence sufficient to raise negligence per se.

In discussing negligence per se in the premises liability act context, our supreme court stated in pertinent part:

The language of the premises liability statute makes clear that a party may no longer bring a negligence per se *claim* against a landowner to recover for damages caused on the premises. The premises liability statute is broad reaching in its scope. . . . [In *Vigil v. Franklin*, 103 P.3d 322, 327 (Colo.2004), we concluded that the premis-

es liability statute's] "express, unambiguous language ... evidences the General Assembly's intent to establish a comprehensive and exclusive specification of the duties landowners owe to those injured on their property." 103 P.3d at 328. We noted that "the General Assembly indicated its intent to completely occupy the field and supersede the existing law in the area." *Id.* As such, we concluded that "the plain language preempts prior common law theories of liability, and establishes the statute as the sole codification of landowner duties in tort." *Id.* Thus, it would be entirely inconsistent with the plain language of the statute and the holdings of this court to bypass the [premises liability] statute and allow for the imposition of liability on the basis of a negligence per se claim. Consequently, we conclude that a plaintiff may recover against the landowner pursuant to the statute only and not under any other theory of negligence.

However, in addressing the premises liability statute, it is an entirely separate question whether proof of the landowner's violation of a statute intended for the plaintiff's protection *is evidence of the landowner's* "unreasonable failure to exercise reasonable care." . . . . Consequently, although the premises liability statute has abrogated certain common law claims and defenses in the premises liability context, we do not find that the General Assembly has clearly expressed its intent to abrogate the common law principle that the violation of a statute *is evidence of a failure to exercise due care. See Vigil*, 103 P.3d at 327 . . . .

*In the absence of guiding legislative intent to the contrary, we conclude that the General Assembly did not intend to preclude a party from arguing that certain statutes and ordinances are relevant to establishing the standard of reasonable care, and thus that the violation of that statute or ordinance is evidence of a failure to exercise reasonable care.*

. . . .

In sum, we hold that with respect to the statutory requirement regarding the landowner's failure to exercise reasonable care,

the plaintiff may overcome the landowner's summary judgment motion by presenting evidence that the landowner violated a statute or ordinance. By necessity, this holding incorporates the common law's requirement that the plaintiff show he is a member of the class the statute was intended to protect, and that the injuries he suffered were of the kind the statute was enacted to prevent.

*Lombard*, 187 P.3d at 574–75 (emphasis added) (additional citations omitted). Guided by this exposition, we address invitee's arguments.

## II. Jury Instructions

Invitee argues initially that the trial court erred in failing to deliver four instructions to the jury. We disagree.

### A. Standard of Review

■ We review jury instructions de novo to determine whether the instructions as a whole accurately informed the jury of the governing law. *Fishman v. Kotts*, 179 P.3d 232, 235 (Colo.App.2007). We consider the court's instructions as a whole. *Montgomery Ward & Co. v. Kerns*, 172 Colo. 59, 63–64, 470 P.2d 34, 36–37 (1970). It follows that it is not error for the trial court to refuse a tendered instruction which correctly states an applicable legal proposition when the instructions given, taken as a whole, properly instruct the jury on that proposition. *Id.; see also Underwood v. Dillon Cos.*, 936 P.2d 612, 615 (Colo.App.1997).

Finally, *Lombard* is binding precedent and the law of the case. *People v. Roybal*, 672 P.2d 1003, 1005 (Colo.1983) (citing *Dando Co. v. Mangini*, 107 Colo. 170, 172, 109 P.2d 1055, 1055–56 (1941); *Morton v. Laesch*, 52 Colo. 541, 125 P. 498 (1912); and *Cache La Poudre Reservoir Co. v. Water Supply & Storage Co.*, 27 Colo. 532, 62 P. 420 (1900)) (law of the case); *People v. Pahl*, 169 P.3d 169, 176 (Colo.App.2006)(binding precedent).

### B. Legal Presumption Instruction

Invitee tendered the following legal presumption instruction, which the trial court rejected:

Presumptions are legal rules based upon experience and public policy and established in the law to help the jury decide a case. If you find by a preponderance of the evidence that the ladder in [the unit in question] violated the Teller County Building Code, *then you must find that the [owners] ... knew or should have known that the ladder was a dangerous condition and that the [owners] failed to take steps to guard against that dangerous condition.*

(Emphasis added.)

■ This proposed instruction by its terms would have created a conclusive presumption that, if the jury found there was a violation of a building code, owners were presumed to know not only of the violation but also that the violation constituted a dangerous condition within the meaning of the premises liability act, and that owners failed to take steps to guard against that dangerous condition. This proposed presumption instruction is contrary to the express holding and rationale of *Lombard*, which is that the violation of a statute or ordinance may be considered merely as *"evidence of a failure to exercise reasonable care."* *Lombard*, 187 P.3d at 575 (emphasis added).

The trial court instructed the jury: "If you find that [owners] violated the applicable building code, you may consider that violation as evidence that [owners] failed to exercise reasonable care. You must consider all evidence regarding this issue in determining whether [owners] exercised reasonable care."

The trial court further instructed the jury:

For the Plaintiffs ... to recover ... on their claims of premises liability, you must find all of the following have been proved by a preponderance of the evidence:

(1) The Plaintiffs had injuries, damages and losses;

(2) The Defendants actually knew about a danger on their property, or as persons or corporations using reasonable care, should have known about it;

(3) The Defendants failed to use reasonable care to protect against the danger of their property; and

(4) The Defendants' failure was a cause of the Plaintiffs' injuries, damages, or losses....

These instructions correctly state the law under the common law and the premises liability act, and they are consistent with *Lombard*. That is, the jury could consider a building code violation as evidence that owners had failed to use reasonable care.

Therefore, the trial court did not err in rejecting the proposed legal presumption instruction.

## C. Other Instructions

Invitee further argues that the trial court erred in rejecting the following proposed instructions:

(1) If the [owners] had to familiarize themselves with the Teller County Building Code in constructing [the unit in question], you may infer from that fact that the [owners] had or should have had notice that the ladder was a dangerous condition.

(2) The law requires the [owners] ... to have known the requirement of the Teller County Building Code in effect at the time they built on their property any structures governed by the Code.

(3) If you find that [owners] *or the Teller County Building Department* knew or should have known that the ladder in question was a dangerous condition and failed to take reasonable steps to protect against it and that this dangerous condition resulted in [invitee's] injuries, then you must find for the Plaintiffs on their claim for premises liability.

(Emphasis added.)

The first and third proposed instructions suffer from the same infirmity discussed above, that is, they equate knowledge of a violation of the building code with knowledge that the violation creates a dangerous condition within the meaning of the premises liability act. As invitee conceded in oral argument, however, not every violation of a building code results in a dangerous condition, or notice of a dangerous condition, within the meaning of the premises liability act.

The third rejected proposed instruction also suffers from a still more profound inconsistency with the law. It stated that if the county building department knew or should have known that the ladder constituted a dangerous condition, that knowledge would be imputed to owners, in presumably the same manner as notice to the officers, directors, employees, or contractors of owners is so imputed. Invitee has not provided, and we have not been able to find, any legal authority supporting this proposition.

■ The second proposed instruction is, standing alone, a correct statement of the law. However, the trial court sufficiently and correctly instructed the jury that (1) corporations can act only through their officers, employees, or agents; (2) any act or omission of an officer, employee, or agent of a corporation while acting within the scope of his or her employment is the act or omission the corporation; (3) a corporation knows a fact if it or its agents or employees have information that would lead a reasonable person to inquire further and that inquiry would have revealed that fact; and (4) parties are presumed to know the law applicable to their conduct, and ignorance of the law is no excuse.

In summary, the trial court did not err in rejecting the proposed instructions because the first and third were incorrect statements of the law and the jury was otherwise adequately and correctly instructed as to the second.

## III. Evidentiary Rulings

Invitee next contends that the trial court erred in denying admission of a set of plans for the construction of units in 1990, and in prohibiting an expert witness endorsed by invitee from testifying. She further argues that the trial court abused its discretion in admitting into evidence a video demonstrating the use of the ladder because it had not been timely disclosed. We disagree with all three contentions.

## A. 1990 Plans

■ A trial court has substantial discretion in deciding questions concerning the rel-

evance and admissibility of evidence. *Palizzi v. City of Brighton,* 228 P.3d 957, 962 (Colo. 2010). Therefore, we will not disturb a trial court's evidentiary ruling unless it constitutes an abuse of discretion. *Id.* A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *Id.*

At trial, invitee offered the 1990 building plans for lofts built in that year. Though the plans from which the loft in question was constructed showed a mattress in the loft implying that it was for occupancy, the 1990 plans designated the loft, as "storage space." The trial court excluded the plans as irrelevant because they were drawn eight years after the unit at issue was constructed, and, relying on CRE 403, concluded that there was a significant chance that the plans could mislead the jury and confuse the issues.

Invitee argues that the 1990 plans put owners on notice that the unit in question here violated the building code, by showing a change in the designated use of the loft space. There was, however, ample evidence introduced through invitee's expert witnesses that the ladder in the unit violated the building code at the time of its construction. Further the trial court instructed the jury that owners are required to follow the law, ignorance of the law is no excuse, and a violation of the building code is evidence that owners failed to exercise reasonable care.

Therefore, we conclude that the trial court did not abuse its discretion in denying admission of the 1990 plans into evidence.

### B. Expert Testimony

Next, invitee contends that the trial court erred in prohibiting her third endorsed expert witness on the building code from testifying. Before a trial scheduled in 2005, invitee endorsed three liability experts. Before the 2009 trial, owners filed a motion requesting that the trial court limit invitee to only one expert witness on each issue. The trial court denied the motion.

At trial, owners objected to the second building code expert testifying because the testimony would be cumulative. In overruling the objection, the trial court stated:

We spent the bulk of the day on the first [building code] witness. And I will tell you right now that if I do allow this testimony, it will be much more streamlined. Quite frankly, it—I'm going to rule on this as it comes, and if I find it to be cumulative, I will rule on it at the time. I'm not going to do it in advance. But I will put the parties on notice that we won't be spending much time on these extra experts. So you prepare your direct accordingly, sir, because we simply don't have time.

Invitee argued that the third expert's testimony would not be cumulative because he was an architect with experience examining building plans, whereas her first two experts were not plan examiners. Ultimately, the trial court concluded that the nearly seven hours of expert testimony on the alleged building code violations were sufficient.

We see no abuse of discretion here. Invitee did not demonstrate in the trial court, and does not do so here, that the third building code expert's testimony added anything substantive to the evidence. Invitee's counsel conceded at trial that the testimony was cumulative, stating that the third expert merely had a different background than those of the first two experts. Therefore, so would go the argument, the third expert would bolster and corroborate the testimony of the first two or, in the alternative, the third expert's testimony would be more credible than that of the first two because of his different experience.

On appeal, invitee also contends that the trial court's refusal to let the third expert testify violates the law of the case doctrine because the trial court had previously denied owners' motion limiting expert witnesses. However, rulings made in the course of ongoing proceedings are interlocutory and may be rescinded or modified during those proceedings on proper grounds. *In re Bass,* 142 P.3d 1259, 1263 (Colo.2006).

Therefore, we see no abuse of discretion in the trial court's refusal to permit the testimony of the third building code expert and

conclude that invitee has failed to demonstrate any prejudice from that refusal.

### C. Video

Invitee next argues that the trial court erred in permitting owners to show to the jury a video recording of a person climbing up and down the ladder to one of the lofts. We disagree.

■ Whether to allow the use of models or other materials for the purpose of demonstration is a matter within the discretion of the trial court. *Hampton v. People*, 171 Colo. 101, 106, 465 P.2d 112, 114 (1970).

At the outset, we reject invitee's law of the case argument for the reasons already stated.

Invitee filed a pretrial motion in limine requesting that the video (actually a collection of short videos) be excluded because it had not been timely disclosed. The trial court granted the motion, but later said it would reconsider the matter.

■ After the testimony of the first building code expert who had inspected the property, the trial court requested a copy of the video for review before ruling on whether to permit its use. At the time the video was offered, ten days after the trial court had indicated it would reconsider its admission, invitee argued for a mistrial, claiming that the admission of the video was prejudicial based on its untimely disclosure, not its content. Indeed, counsel stated, "I wouldn't say that [the video is] prejudicial after review."

In rejecting this argument, the trial court noted that invitee had been on notice for more than ten days that the court was going to review the video and make a decision on its admissibility. When the video was played for the jury, invitee cross-examined the witness and published to the jury several still images from the video.

Therefore, we conclude that the trial court did not abuse its discretion in admitting the video.

### IV. Insurance

Invitee next argues that the trial court erred in denying her motion for a mistrial after owners' counsel implied during his examination of witnesses and in closing argument that any money judgment would be paid by owners, when, in fact, owners were well insured. We are not persuaded.

Evidence that a party did, or did not, carry liability insurance, is not admissible. CRE 411.

During the examination of witnesses and in closing argument, invitee's counsel made contemporaneous objections and eventually a motion for mistrial after the three following statements by owners' counsel: (1) "Well as the attorney for the camp that is going to have to pay that money," (2) "My client [has] to pay millions of dollars in the case," and (3) "Rely on what you know to be true about personal responsibility and personal choices, and award no damages to [invitee] or [school district] payable by my client."

The trial court overruled all of the objections, commenting as to the first objection that the courtroom was in such bedlam that the court doubted the jury heard the statement. The trial court overruled the second and third objections and denied the motion for a mistrial without comment.

■ An attorney's attempt to refer to insurance coverage or a lack thereof at trial is improper. *Prudential Prop. & Cas. Ins. Co. v. Dist. Court*, 617 P.2d 556, 559–60 (Colo.1980). We review evidentiary rulings for an abuse of discretion. *Palizzi*, 228 P.3d at 962. A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *Id.*

■ In addition, "mere inadvertent or incidental mention of insurance [or the lack of insurance] before the jury does not automatically call for a mistrial; unless prejudice is shown, there is no reversible error in denying a mistrial." *Jacobs v. Commonwealth Highland Theatres, Inc.*, 738 P.2d 6, 12 (Colo.App.1986). Indeed, "only when the mention of insurance occurs in a flagrant manner that clearly prejudices the rights of a [party] is the trial court's denial of the motion for a mistrial reversible error." *Cook Investment Co. v. Seven–Eleven Coffee Shop, Inc.*, 841 P.2d 333, 335 (Colo.App.1992).

■ We cannot say that any of these statements, taken individually or cumulatively, was flagrant. Nor do we perceive any prejudice to invitee. The trial court is ultimately in the best position to determine the effect on the jury of these types of comments.

Therefore, we conclude that the trial court did not abuse its discretion.

### V. Costs

Invitee next argues that the award of costs for expert witness fees for witnesses who were not called at trial and photocopying of owners' client file upon substitution of counsel was error. We disagree as to the expert witness, but agree as to the photocopy expense.

■ Generally, a trial court enjoys broad discretion in awarding costs, and we will not overturn such an award absent an abuse of discretion. *Morris v. Belfor USA Group, Inc.*, 201 P.3d 1253, 1261 (Colo.App.2008).

Here, after a hearing, the trial court entered a written order in which it concluded that, "the costs requested by the prevailing party ... were reasonable and necessary and properly awardable against plaintiffs."

### A. Non-testifying Expert Witness

■ First, invitee argues that the cost of the expert witnesses who were retained for purposes of testimony, but who did not testify, should not have been awarded. However, costs are permitted for non-testifying experts hired to provide advisory or consulting services, *Mgmt. Specialists, Inc. v. Northfield Ins. Co.*, 117 P.3d 32, 38–39 (Colo.App.2004), and costs are permitted for experts who do not testify "because some extrinsic circumstance rendered their testimony unnecessary." *Clayton v. Snow*, 131 P.3d 1202, 1203 (Colo.App.2006).

■ In this case, the experts' testimony was not proffered because owners' counsel concluded that the cross-examination of invitee's experts was sufficient. The trial court found that the advice and assistance of owners' experts contributed to the cross-examination of invitee's experts.

We perceive no abuse of discretion in the trial court's decision to award the costs of experts who were not called to testify.

### B. Copying Owners' Client File

■ Invitee also argues that the trial court erred in awarding owners' costs for copying owners' client file upon the discharge of owners' first counsel. We agree.

Invitee relies, in part, on Colorado Bar Association Formal Ethics Opinion 104, Surrender of Papers to the Client upon Termination of the Representation (1999). That opinion deals with the obligation of an attorney upon termination of the representation to take reasonable steps to protect the client's interests, including surrender of the client's papers and property. While the analysis there is somewhat more extended, the fundamental premise of the opinion is that the client file is the property of the client and must be surrendered upon request. With respect to copying the client file prior to surrender, the opinion states, in part:

> Numerous questions may arise concerning the costs of duplication of the papers and property at the time of delivery. Generally, consistent with recognition that the file must be surrendered to the client, absent agreement to the contrary, it is the lawyer's responsibility to bear duplication costs if the lawyer believes that the lawyer should retain a copy. The fact that copies of documents may have been provided to the client previously does not eliminate the responsibility of the lawyer to provide the client with the file. If the lawyer wishes to keep copies of the documents to which the client is entitled, the lawyer can do so at his own expense.

While the Ethics Committee does not express opinions on the law, its guidance in this regard is, nevertheless, useful.

Here, owners, for whatever reason, voluntarily agreed to pay the discharged counsel the cost of photocopying the client file for the benefit or protection of counsel. Because owners agreed to pay that which they had no other obligation to pay, we conclude that we must vacate the order of the trial court

awarding the cost of photocopying owners' client file.

### VI. School District's Liability for Costs

■ School district contends that the trial court erred in awarding costs against it because it is a political subdivision of the state of Colorado and is exempt from an award of costs by C.R.C.P. 54(d). We agree.

C.R.C.P. 54(d) states that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs; *but costs against the state of Colorado, its officers or agencies, shall be imposed only to the extent permitted by law*." (Emphasis added.)

School district, as a public school district, is a political subdivision of the state. *Hazlet v. Gaunt*, 126 Colo. 385, 397, 250 P.2d 188, 194 (1952).

■ In *Waters v. District Court*, 935 P.2d 981, 990 (Colo.1997), an indigent parent's appointed counsel brought a successful mandamus against the district court to compel payment of attorney fees incurred in the underlying action and requested an award of costs incurred in the mandamus action. In denying costs, our supreme court stated:

> With regard to the State, we have interpreted these rules to mean that costs may be awarded against the State where there is an express legislative provision for costs against the State or where the State is in the position of a party litigant against whom costs are otherwise legislatively authorized to be awarded. *See Bennett Bear Creek Farm Water & Sanitation Dist. v. City & County of Denver*, 928 P.2d 1254, 1273–74 (Colo.1996); *Central Colo. Water v. Simpson*, 877 P.2d 335, 349 (Colo.1994); *Passarelli v. Schoettler*, 742 P.2d 867, 872 (Colo.1987); *Division of Employment & Training v. Turynski*, 735 P.2d 469, 472–73 n. 5 (Colo.1987); *Board of County Comm'rs v. Slovek*, 723 P.2d 1309, 1313 (Colo.1986); *Lee v. Colorado Dep't of Health*, 718 P.2d 221, 228–29 (Colo.1986).

In this case, however, there exists no substantive legislative authorization for the award of costs separate from C.R.C.P. 59(d) and C.A.R. 39(b). The provision in CJD 89–3 for attorney fees and costs does not apply to Waters because she is representing herself, rather than her client, in this action. Thus, we find that the rationale of *Central Colorado Water* is applicable to this case, and we deny Waters's request for costs in bringing this original proceeding.

935 P.2d at 990; *see also Farmers Reservoir & Irrigation Co. v. City of Golden*, 113 P.3d 119, 130 (Colo.2005). Merely showing that the state is in the position of a party-litigant is insufficient to award costs against the state under a general costs provision. *Farmers Reservoir*, 113 P.3d at 130.

Here, owners have sought costs under C.R.C.P. 54(d), section 13–16–105, C.R.S. 2010, and section 13–16–122, C.R.S.2010.[1] These provisions are general costs provisions.

Owners argue that because the school district initiated the proceeding, it waived any immunity from costs. They cite *Division of Employment & Training v. Turynski*, 735 P.2d 469, 472 n. 5 (Colo.1987), in support of this argument. In the footnote, our supreme court stated, in pertinent part, that, "by appealing the industrial commission's award of benefits to the court of appeals and by petitioning for certiorari from the court of appeals' affirmance of the commission ruling, [the state agency] had waived immunity and caused the claimant to incur high costs." *Id.* The court cited *Lee v. Colorado Department of Health*, 718 P.2d 221 (Colo.1986), in which a successful litigant under the Colorado Governmental Immunity Act (CGIA), §§ 24–10–101 to –120, C.R.S.2010, recovered the each-person statutory limit on damages, which is inclusive of costs and interest of $150,000, and sought an award of costs against the department. The department's insurance

---

**1.** Section 13–16–105 reads, "If any person sues in any court of record in this state in any action wherein ... a verdict is passed against him, then the defendant shall have judgment to recover his costs against the plaintiff ... and the same shall be recovered of the plaintiff or demandant, by like process as the plaintiff or demandant might have had against the defendant, in case judgment has been given for the plaintiff or demandant." Section 13–16–122 lists some items recoverable as costs.

had a policy limit of $150,000 for each person and, in addition, a provision for the payment of costs and interest. The CGIA provided that if a public entity was insured with policy limits in excess of the statutory limit, the policy limits controlled. Our supreme court reversed the trial court's award of costs but remanded for consideration of the applicability and scope of the insurance policy's costs provision.

*Lee* is extremely limited in its scope, that is, the award of costs is limited by the insurance policy liability limits if higher than the statutory limit which includes costs and interest. *Turynski*, in our view, is not persuasive here because it arose in an administrative proceeding to which C.R.C.P. 54(d), section 13–16–105, and section 13–16–122, do not apply.

In addition, in interpreting Fed.R.Civ.P. 54, which is, for all practical purposes, identical to C.R.C.P. 54, federal courts have been clear that "in the absence of a statute directly authorizing it, courts will not give judgment against the United States for costs or expenses." *Walling v. Norfolk Southern Ry. Co.*, 162 F.2d 95, 96 (4th Cir.1947) (quoting *United States v. Worley*, 281 U.S. 339, 344, 50 S.Ct. 291, 74 L.Ed. 887 (1930)). This is true even if the costs are incurred in an unsuccessful action brought by the United States. *Id.*, (citing *DeGroot v. United States*, 72 U.S. 419, 5 Wall. 419, 18 L.Ed. 700 (1866)).[2]

We conclude the award of costs against school district must be vacated. Having so concluded, we need not address school district's related argument that it was error to award costs against it on a joint and several basis with invitee.

The judgment is affirmed. The orders awarding costs for copying owners' client file upon a change of counsel and awarding costs

against school district are vacated, and the cost order is otherwise affirmed.

J. JONES and CRISWELL *, JJ., concur.

---

**2.** The school district is bringing a subrogation claim as it is self-insured for workers' compensation coverages. § 8–41–203, C.R.S.2010. It has long been recognized that public entities acting in a proprietary capacity are treated the same as private corporations. *See, e.g., City of Northglenn v. City of Thornton*, 193 Colo. 536, 542, 569 P.2d 319, 323 (1977) (water utility); *Bd. of County Comm'rs v. City of Fort Collins*, 68 Colo. 364, 189 P. 929 (1920) (same); *Valdez v. Moffat County*, 161 Colo. 361, 423 P.2d 7 (1967)(hospital).

The school district appears to be litigating in a proprietary capacity. We have not found any authority in which the governmental-proprietary distinction has been applied to the award of costs under C.R.C.P. 54(b) or similar rules in other jurisdictions.

